THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHNNY MATTHEWS, Defendant-Appellant.

First District (1st Division) No. 1—04—1656

Opinion filed December 19, 2005.—Rehearing denied January 26, 2006.

Michael J. Pelletier and Robert Hirschhorn, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (James Fitzgerald, Heather Fahrenkrog, and Kristine A. Shrode, Assistant State's Attorneys, of counsel), for the People.

JUSTICE GORDON delivered the opinion of the court:

Defendant, Johnny Matthews, appeals from his conviction after a bench trial of possession of a controlled substance with intent to deliver. He contends that he must receive a new trial because his trial attorney stipulated to the identity and amount of controlled substances recovered by the police without any expression in the record of his assent, and that counsel's agreement to stipulate was so unreasonable as to amount to ineffective assistance of counsel. Defendant further appeals his sentence claiming that the sequence of his prior convictions was required to be proven beyond a reasonable doubt under recent United States Supreme Court precedent, and that he was not, in fact, eligible for Class X sentencing. Finally, defendant argues that we must correct his mittimus to reflect conviction for the proper charge. For the following reasons, we affirm the conviction and sentence, but correct the mittimus.

## FACTUAL BACKGROUND

At trial, Chicago police officer Coleman testified that he and his partner were called to the vicinity of 6201 South Stoney Island Avenue, on the afternoon of August 17, 2003, because of a complaint of a person selling narcotics. When he arrived he set up a surveillance from within his unmarked police car, about one block away from where he observed defendant. Coleman's view of defendant was unobstructed and his ability to perceive defendant was enhanced by sunlight and his use of binoculars.

Officer Coleman testified that he observed defendant attempt to flag down passing cars and pedestrians. One pedestrian did approach defendant, at which time a brief conversation occurred, followed by the pedestrian passing defendant money and defendant passing back packets containing a white substance. Coleman suspected the white substance to be narcotics.

When Coleman and his partner approached on foot, the pedestrian ran away, while defendant started to walk away while also dropping two white-powder-filled ziplock bags from his left hand. Coleman recovered the bags, while his partner placed defendant under arrest. A custodial search of defendant revealed that he had $698 on his person.

Following Officer Coleman's testimony, the assistant State's Attorney stated "at this time, the State would proceed by way of written stipulation as to the chain of custody and laboratory analysis of the items recovered which we would ask *** be admitted under People's One." Defense counsel responded "So stipulated," and defendant made no objection to its admission himself.

The form stipulation entered into evidence provided, in pertinent part, that Coleman would testifty:

"a. That on 8-17-03 he/she recovered a ___ (description of any outer packaging) which contained 2 plastic bags (of items) of powder (description of drug packaging), which he/she kept within his/her safe keeping and control from the time of recovery until the inventory of said item(s).

b. That he/she inventoried those item(s) under inventory # 10186866 pursuant to Chicago Police Department inventory procedures by heat-sealing them in an inventory envelope for delivery to the Illinois State Police Crime Lab. That when the item(s) left his possession, they were in a sealed condition.

c. That if he/she were shown inventory listed in 1(b) above in open court, he would testify that the item(s) are in substantially the same condition, with the exception of the crime lab notation and markings made during analysis, as when they were recovered."

The written stipulation went on to provide that if Nancy McDonagh, a forensic chemist, were called to testify, she would testify:

"a. That he/she received the inventory listed in 1(b) above in a heat-sealed condition from the Chicago Police Department.

b. That said inventory envelope was opened and found to contain 2 (# of items) of plastic bags of powder (description of drug packaging).

c. That Forensic Chemist McDonagh employed by the Illinois State Police Crime Lab is qualified to testify as an expert in the area of Forensic Chemistry, and all equipment used was tested, calibrated, and functioning properly when the above items were tested.

d. That the Chemist performed tests commonly accepted in the area of Forensic Chemistry for ascertaining the presence of a controlled substance on the item(s) described above.

e. That after performing the test on the contends [*sic*] of 1 (# of items tested) of the 2 (# of total items recovered) item(s) recovered,

the Chemist's expert opinion, within a reasonable degree of scientific certainty, is that the contents of the tested item(s) were positive for the presence of <u>heroin</u> (type of drug) and that the actual weight of those items was <u>0.3</u> grams. That the Chemist would further testify that the total estimated weight of the <u>2</u> (# total items recovered) items would be <u>0.6</u> grams.

f. That after the testing and analysis of inventory # <u>10186866</u> was complete, he/she would further testify that it was again sealed, and he/she would be able to identify it in open court as the same item(s) that he/she tested and that they are still in a sealed condition.

That a proper chain of custody was maintained at all times."

The written stipulation concluded with the assistant State's Attorney's and defense trial counsel's signatures appearing under a heading reading "SO STIPULATED." The State's case concluded with another, exclusively oral, stipulation that an investigator would testify that the distance between defendant's arrest and Jackson Park was 15 feet, determined by using a calibrated roller tape model 400.

Defendant's case consisted exclusively of his own testimony. He testified that he was a part of the narcotics transaction testified to by Officer Coleman, but as the buyer, not the seller. According to defendant, when the police approached, his dealer dropped the packets of heroin before he could take possession of them. Defendant averred that his arresting officer told him that the drugs were his, and upon finding the large amount of cash on defendant, told him to say that he was the seller. Defendant explained that he obtained the cash recovered by cashing his Social Security check in order to pay bills and that he kept the money on his person because he "didn't want it to get stolen."

In rebuttal, the State sought to present defendant's "certified copy [sic] of convictions." The State referenced cases 97 CR 03488 and 97 CR 24853; both cases listed defendant's convictions for possession of a controlled substance with intent to deliver resulting in sentences of two years each. Defense trial counsel pointed out, however, that if the convictions were for possession with intent to deliver, the minimum sentence would have to be three years and stated "I think it was reduced to PCS [simple possession]." In response, the State indicated "Certified copies do not show an amendment to the charge."[1]

After closing arguments, the circuit court entered a finding of guilty as to one of the two counts of possession with intent to deliver.

---

[1]The State also introduced one other substantially similar case, 96 CR 24253, and defense counsel reiterated the inconsistency between the charge given and the sentence imposed.

The court ordered the preparation of a presentence investigation report and, roughly one month later, held a sentencing hearing.

At the sentencing hearing, the parties acknowledged their receipt of the probation department's presentence investigation report. Neither party objected to or observed any inaccuracies in the report. Reviewing the report, the court counted eight prior felony convictions. The State, however, corrected that the proper criminal history was six felony convictions and two misdemeanor convictions. The State presented no argument at sentencing, "rest[ing] on the facts of the case as well as the pre-sentence." Defense counsel, on the other hand, argued that, although "Defendant [was] Class 'X' mandatory," "the two cases that [made] him Class 'X' mandatory, [were] both more than 10 years old; one *** a '91 case and the other *** a '92." Trial counsel concluded by observing that defendant was ultimately Class X mandatory "because of the forgery [conviction]." The court then imposed a sentence of 10 years' incarceration under the Class X provisions of the Unified Code of Corrections (730 ILCS 5/5—5—3(c)(8) (West 2002)).

## ANALYSIS

Defendant first contends that he should receive a new trial because there is no indication that he assented to a waiver of his sixth amendment confrontation rights through his counsel stipulating to the identity and weight of the powder recovered by the police. We disagree.

The parties agree that this question is controlled by our supreme court's decision in *People v. Campbell*, 208 Ill. 2d 203 (2003). However, at the time of briefing, the holding of this case had been subject to differing interpretations in various decisions of the appellate court. See *People v. Foerster*, 359 Ill. App. 3d 198 (2005); *People v. Banks*, 358 Ill. App. 3d 924 (2005); *People v. Scott*, 355 Ill. App. 3d 741 (2005); *People v. Phillips*, 352 Ill. App. 3d 867 (2004), *rev'd by People v. Phillips*, 217 Ill. 2d 270 (2005).

The *Campbell* court held:

"[C]ounsel in a criminal case may waive his client's sixth amendment right of confrontation by stipulating to the admission of evidence as long as the defendant does not object to or dissent from his attorney's decision, and where the decision to stipulate is a matter of legitimate trial tactics or prudent trial strategy. Where the stipulation includes a statement that the evidence is sufficient to convict the defendant or where the State's entire case is to be presented by stipulation, we find that a defendant must be personally admonished about the stipulation and must personally agree to the stipulation." *Campbell*, 208 Ill. 2d at 220-21.

In interpreting this holding, the *Phillips* court, of the Third District, stated:

"Construing the fundamental constitutional right in conjunction with the supreme court's decision in *Campbell*, we conclude that in order to waive the defendant's sixth amendment right of confrontation by stipulating to the admission of evidence, there must be some affirmative showing or indication by the defendant in the record that he or she did not object to or dissent from the attorney's decision to stipulate." *Phillips*, 352 Ill. App. 3d at 871.

The *Phillips* court held that the showing that the defendant "was advised of the right to confront witnesses and of the nature and legal impact of waiving that right through the proposed stipulation, and either concurred with or objected to it," ensured that the defendant's waiver was intelligent and voluntary. *Phillips*, 352 Ill. App. 3d at 871.

However, less than one year later, another panel of the Third District rejected *Phillips* in *Scott*. The *Scott* court observed that in fashioning its record showing requirement, the *Phillips* court relied on a statement from *People v. McClanahan*, 191 Ill. 2d 127, 137-38 (2000), that "these stipulations properly require a defendant to make a voluntary, knowing, and intelligent decision whether he wishes to waive his right to confront the preparer of the report." *Scott*, 355 Ill. App. 3d at 745. The *Scott* court noted, however, that the *Campbell* court evaluated the same language and stated:

" 'Defendant argues that based upon the foregoing language, it is clear that any waiver of the right to confrontation must be a knowing waiver made by the defendant personally.

We decline to read *McClanahan* so broadly. Contrary to defendant's interpretation of *McClanahan*, this court has never held that only a defendant can waive his sixth amendment right of confrontation.' " *Scott*, 355 Ill. App. 3d at 745-46, quoting *Campbell*, 208 Ill. 2d at 212.

*Scott* contended that, in holding that defendants did not have an exclusive personal right to waive confrontation in all cases, the *Campbell* court had "explicitly rejected the rationale employed by the *Phillips* court." *Scott*, 355 Ill. App. 3d at 746. The *Scott* court therefore concluded: "Contrary to *Phillips*, we believe that *Campbell* indicates that the record need not establish the defendant was informed of and explicitly waived his confrontation rights." *Scott*, 355 Ill. App. 3d at 746; accord *Foerster*, 359 Ill. App. 3d at 200; *Banks*, 358 Ill. App. 3d at 926 (both citing *Scott*).

■ Since the parties first briefed the issues in this case, our supreme court, within the past week, resolved this dispute when it reversed the *Phillips* appellate court decision in *People v. Phillips*, 217 Ill. 2d 270 (2005) and validated the holdings of *Scott*, *Foerster*, and *Banks*. The supreme court explained that the *Phillips* appellate court

decision had misconstrued the holding of *Campbell* and reiterated that, under *Campbell*:

" '[D]efense counsel may waive a defendant's right of confrontation as long as the defendant does not object and the decision to stipulate is a matter of trial tactics and strategy.' [Citation.] However, \*\*\* a defendant must *personally* waive the right of confrontation 'when the State's entire case is to be presented by stipulation and the defendant does not present or preserve a defense \*\*\*, or where the stipulation includes a statement that the evidence is sufficient to convict the defendant.' [Citation.] We attached no other restrictions to defense counsel's authority to stipulate to the admission of evidence, and, except in those specified instances where the stipulation is tantamount to a guilty plea, we imposed no obligations on the trial court or counsel to admonish the defendant and ensure that the advisement is made a part of the record. Insofar as the appellate court held otherwise, the court erred." (Emphasis in original.) *Phillips*, 217 Ill. 2d at 283.

Defendant may still attempt to characterize the stipulation in his case as tantamount to admitting his guilt, as he did in his brief prior to our supreme court's resolution of the appeal in the *Phillips* case. He would therefore contend, again, as set out in his brief, that even under the rule of *Campbell* followed in *Phillips*, "[w]here the stipulation includes a statement that the evidence is sufficient to convict \*\*\* a defendant must be personally admonished about the stipulation and must personally agree to the stipulation." *Campbell*, 208 Ill. 2d at 221. Specifically, defendant argues that his counsel impermissibly employed a strategy to avoid conviction of possession of a controlled substance with intent to deliver by stipulating to guilt of simple possession, or attempted possession, of a controlled substance. We disagree.

Preliminarily, we observe that the *Phillips* supreme court opinion, as well as *Foerster* and *Banks*, all held that stipulations as to the identity and weight of recovered narcotics did not amount to stipulations that the evidence was sufficient to convict the defendant. *Phillips*, 217 Ill. 2d at 287 ("Since counsel's stipulations did not render defendant's trial the ' "practical equivalent of a plea of guilty," ' there was no need for defendant to be 'personally admonished about the stipulation' and 'personally agree to the stipulation.' [Citation.] The critical issue of knowing possession remained, and indeed, that was the focus of trial"); *Foerster*, 359 Ill. App. 3d at 200; *Banks*, 358 Ill. App. 3d at 926. These holdings are consistent with the notions that stipulations merely to particular, undisputed evidentiary facts; or that certain testimony would be presented, without conceding the truth of that testimony; or even as to the satisfaction of one element of an offense, while other elements are not so stipulated, do not amount to

actual concessions of guilt. See *People v. McIntyre*, 221 Ill. App. 3d 810, 813 (1991) ("Defendant did not plead guilty in this case, but instead persisted in his plea of not guilty and required the trial court to render a finding of guilty or not guilty on the facts which were not disputed. \*\*\* Defendant did not stipulate or concede that the facts related by the assistant State's Attorney would be sufficient to warrant a finding of guilt beyond a reasonable doubt. \*\*\* Since no such concession was made by defendant in this case, we do not agree with defendant \*\*\* that the stipulated bench trial was tantamount to a guilty plea"); see also *United States v. Muse*, 83 F.3d 672, 681 (4th Cir. 1996) ("Because the jury was still required to consider and return a verdict finding [the defendant] guilty of all of the elements of the offense, his theory [that admonitions were required] is without support. \*\*\* Of course, the issue would be different if [the defendant] had stipulated to all the elements of the offense. In such a case, the knowing and voluntary nature of [the defendant's] entry into the stipulations (amounting effectively to a *de facto* guilty plea) would raise more significant concerns"); *People v. Adams*, 6 Cal. 4th 570, 580, 862 P.2d 831, 837, 24 Cal. Rptr. 2d 831, 837 (1993) (holding the admonishment and express waiver requirements not to be "applicable to an evidentiary stipulation which does not admit the truth of the allegation itself or every fact necessary [for liability to attach]").

■ Contrary to defendant's assertion, the stipulation at issue here, as in the foregoing cases, does not, in fact, tie defendant to the narcotics recovered so as to establish his possession or attempted possession. Rather, the stipulation merely contends that Officer Coleman recovered certain bags of powder. The stipulation does not encompass from what source or whose possession or custody the substance was obtained or any other facts reflecting defendant's involvement. Defendant's possession, actual or attempted, was established not through counsel's stipulation, but through Officer Coleman's and defendant's in-person testimony.

■ Nor can we find trial counsel's decision to enter such a stipulation to amount to ineffective assistance of counsel. To prevail on a claim of ineffective assistance of counsel, a defendant must show that his attorney committed such serious errors as to fall beyond an objective standard of reasonableness and that he suffered prejudice from those errors. *Strickland v. Washington*, 466 U.S. 668, 687-94, 80 L. Ed. 2d 674, 693-98, 104 S. Ct. 2052, 2064-68 (1984); see also *People v. Albanese*, 104 Ill. 2d 504, 526 (1984). Courts will not find ineffective assistance based merely on tactical miscalculations, as counsel's strategic choices are "virtually unchallengeable." *People v. Palmer*, 162 Ill. 2d 465, 476 (1994).

Defendant attacks his trial counsel's employment of a strategy in which he would admit his presence as a buyer but not as a seller, thereby conceding his guilt of a lesser offense in order to avoid conviction of the greater offense charged. Ideally, from defendant's perspective, trial counsel would have successfully employed some strategy to achieve his exoneration of all crimes. However, defendant does not identify, and we cannot conceive, what that strategy, realistically, would have been. There is no reason to think that if trial counsel sought to set up a credibility contest between Officer Coleman and defendant, in which defendant would deny having any involvement in the narcotics transaction testified to by Coleman, that defendant, impeached by his prior convictions, would win. Therefore defendant has failed to establish either the unreasonable conduct or prejudice prong of *Strickland*.

Defendant next contends that, even if properly convicted, he must be resentenced. Defendant was sentenced under section 5—5—3(c)(8) of the Unified Code of Corrections. 730 ILCS 5/5—5—3(c)(8) (West 2002). That section provides:

> "When a defendant, over the age of 21 years, is convicted of a Class 1 or Class 2 felony, after having twice been convicted in any state or federal court of an offense that contains the same elements as an offense now classified in Illinois as a Class 2 or greater Class felony and such charges are separately brought and tried and arise out of different series of acts, such defendant shall be sentenced as a Class X offender. This paragraph shall not apply unless (1) the first felony was committed after the effective date of this amendatory Act of 1977; and (2) the second felony was committed after conviction on the first; and (3) the third felony was committed after conviction on the second." 730 ILCS 5/5—5—3(c)(8) (West 2002).

Defendant argues that *Shepard v. United States*, 544 U.S. 13, 161 L. Ed. 2d 205, 125 S. Ct. 1254 (2005), extended the requirements of *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), namely, proof beyond a reasonable doubt of aggravating factors that increase the sentence beyond that applicable to the base offense, to the sequence of his prior convictions and his age. He then contends that the mere provision of a presentence report could not satisfy that standard. Finally, he argues that the offenses presented in the presentence report, as a matter of fact, did not make him Class X eligible.[2] We disagree with both contentions.

In *Shepard*, a defendant faced prosecution under the Armed

---

[2] We note at the outset that the record reflects that defendant actually admitted his Class X eligibility. The State, however, does not argue that admis-

Career Criminal Act (18 U.S.C. § 924(e) (2000)) (hereinafter ACCA), a sentencing provision that significantly increases the penalty faced by a defendant charged as a felon in possession of a firearm who also has three prior violent crime or drug convictions. Shepard's alleged predicate convictions resulted from guilty pleas for burglaries, which could constitute violent crimes under the ACCA if they involved entry into buildings or enclosed spaces, but not if they involved entry into cars or boats. The Massachusetts burglary statute, under which Shepard had been convicted, however, did not distinguish between offenses involving buildings, enclosed spaces, cars or boats. There were no judicial records, such as jury instructions, plea colloquies, statements of factual bases for the charge, written plea agreements, or a judge's formal findings of law and fact, available to make the distinction either. The government attempted to use pretrial records, including police arrest reports and petitions for criminal complaints, to establish that Shepard's convictions surrounded buildings and enclosed spaces. *Shepard*, 544 U.S. at 17, 161 L. Ed. 2d at 212, 125 S. Ct. at 1257-58.

A plurality of the *Shepard* Court observed that if a trial judge were permitted to make inquiries or resolve disputes surrounding the factual bases underlying prior convictions, concerns surrounding the sixth amendment right to a jury trial, as presented in *Apprendi*, would be injected into the proceedings. *Shepard*, 544 U.S. at 25, 161 L. Ed. 2d at 217, 125 S. Ct. at 1262. However, the *Shepard* plurality distinguished between judicial fact-finding *"about"* a conviction, which would refer to the actual events that transpired in committing the crime for which the conviction was issued, and the finding *"of"* a prior

---

sion as being dispositive of this appeal. Perhaps this may be attributed to the fact that defendant's admission was made prior to the United States Supreme Court's decision in *Shepard*, which raises a question as to whether proof of recidivisim in all instances remains an exception to *Apprendi* under *Almendarez-Torres v. United States*, 523 U.S. 224, 140 L. Ed. 2d 350, 118 S. Ct. 1219 (1998). In that regard we note that, at the time that *Shepard* came down, Illinois law was controlled by *People v. Williams*, 149 Ill. 2d 467 (1992), which permitted proof of defendant's recidivism through his presentence investigation report (PSI). Accordingly, it would perhaps be unreasonable to hold defendant to an admission of the adequacy of his Class X proof in the face of a decision by the United States Supreme Court which opens that underlying proof up to question. In any event, since that contention was not raised by the parties, we will proceed to evaluate defendant's arguments with regard to proof of his Class X claims on their merits, although, as reflected below, under our analysis the result that we reach upholds Illinois's preexisting law as articulated in *Williams*.

conviction, which merely identified the conviction of the crime without reference to the manner in which the crime was perpetrated; *Shepard* specifically noted that judicial fact-finding "of a disputed prior conviction" remained permissible under *Almendarez-Torres v. United States*, 523 U.S. 224, 140 L. Ed. 2d 350, 118 S. Ct. 1219 (1998). *Shepard*, 544 U.S. at 25, 161 L. Ed. 2d at 217, 125 S. Ct. at 1262; see also *Almendarez-Torres*, 523 U.S. at 243-44, 140 L. Ed. 2d at 368, 118 S. Ct. at 1231 ("the Court said long ago that a State need *not* allege a defendant's prior conviction in the indictment or information that alleges the elements of an underlying crime, even though the conviction was 'necessary to bring the case within the statute.' [Citation.] That conclusion followed, the Court said, from '*the distinct nature of the issue*,' and the fact that recidivism 'does not relate to the commission of the offense, *but goes to the punishment only*, and therefore ... may be subsequently decided.' [Citation.]" (emphasis in original)); *United States v. Schlifer*, 403 F.3d 849, 852 (7th Cir. 2005) (" 'the fact of a prior conviction' may be found by a judge by the preponderance of the evidence"); *United States v. Wilson*, 406 F.3d 1074, 1075 (8th Cir. 2005) ("The fact of a prior conviction need not be submitted to a jury or proved beyond a reasonable doubt"). This distinction was also reiterated in *United States v. Carpenter*, 406 F.3d 915, 917 (7th Cir. 2005), where the court said: "As the court explained in *Shepard v. United States*, [citation], a sentencing court is entitled to classify and take into account the nature of a defendant's prior convictions, provided that the judge does not engage in factfinding about what the accused *did* (as opposed to what crime he has been convicted of)." (Emphasis in original.) See also *Stokes v. State*, 828 N.E.2d 937, 942 (Ind. App. 2005) ("here there is not a concern as to *how* an offense underlying a prior conviction was committed; rather, the concern is *if* the defendant has any prior convictions" (emphasis in original)). As the *Apprendi* Court explained, "the certainty that procedural safeguards attached to any 'fact' of prior conviction *** mitigate[s] the due process and Sixth Amendment concerns otherwise implicated in allowing a judge to determine a 'fact' increasing punishment beyond the maximum of the statutory range." *Apprendi*, 530 U.S. at 488, 147 L. Ed. 2d at 454, 120 S. Ct. at 2362; see also *United States v. Cheek*, 415 F.3d 349, 353 (4th Cir. 2005) ("As a product of our judicial administration, the fact of conviction is 'of record and needs only to be judicially noticed or otherwise summarily demonstrated to the court to become part of the sentencing proceedings").[3]

---

[3]We note the incongruity of allowing a lesser standard of proof, by a preponderance of the evidence, when the evidence is presumptively reliable and inherently incapable of dispute.

Regarding judicial fact-finding surrounding facts "about" a conviction under the ACCA, the *Shepard* majority sought to ensure the same kind of reliability that attached to facts "of" prior convictions by reaffirming its decision in *Taylor v. United States*, 495 U.S. 575, 109 L. Ed. 2d 607, 110 S. Ct. 2143 (1990), and holding that "respect for congressional intent and avoidance of collateral trials require that evidence of *** conviction [of burglary of a building or enclosed space] be confined to records of the convicting court approaching the certainty of the record of conviction in a *** State [whose burglary statute was limited to cases involving entry into buildings or enclosed spaces]." *Shepard*, 544 U.S. at 23, 161 L. Ed. 2d at 216, 125 S. Ct. at 1261. The majority went on to hold, in cases such as Shepard's, that the necessary factual elements for the predicate conviction to be counted as a burglary under the ACCA had to be proved through "the terms of the charging document, the terms of a plea agreement or transcript of colloquy between judge and defendant in which the factual basis for the plea was confirmed by the defendant, or to some comparable judicial record of this information." *Shepard*, 544 U.S. at 26, 161 L. Ed. 2d at 218, 125 S. Ct. at 1263. According to the plurality, if such records were not available, then the disputed fact would have to be submitted to the fact finder for proof beyond a reasonable doubt. *Shepard*, 544 U.S. at 26, 161 L. Ed. 2d at 218, 125 S. Ct. at 1263. In any event, the majority concluded that the police reports and complaint applications submitted by the prosecution could not pass muster under its announced standards. *Shepard*, 544 U.S. at 20-23, 161 L. Ed. 2d at 214-16, 125 S. Ct. at 1260-61.

Defendant contends that the sequence of his convictions and his age are facts "about" his convictions. He further contends that his PSI, like the police reports at issue in *Shepard*, is insufficiently reliable to allow for a determination that he is Class X eligible. We first disagree because we find the facts required for Class X sentencing to be facts "of" a prior conviction as opposed to "about" a prior conviction. In this case we are not concerned with what defendant did in committing the offenses that formed the basis of his prior convictions, but are only concerned with the convictions themselves and those ancillary facts included within the judicial record of conviction. Unlike the statute in *Shepard*, the Class X statute does not concern the manner in which the offenses were committed, but only their statutory classification and sequence and the defendant's age at the time. These factors can be gleaned or derived from the same reliable sources that are available to prove the fact "of" the convictions themselves. However, even if we considered ourselves as being called upon to evaluate facts "about" a prior conviction, we would still hold in favor of the

State since defendant has failed to show that the PSI in this case could not have constituted sufficiently reliable evidence under *Shepard*. See *United States v. Hollingsworth*, 414 F.3d 621, 623 (6th Cir. 2005) (holding the "issue in [*Shepard*] was not *whether* district courts could make findings about prior convictions, but simply *what sources they could rely on* to make such findings" (emphasis in original)).

Our interpretation of the plurality's holding in *Shepard*, including defendant's age and the sequence of his convictions as facts "of" a conviction, is consistent with the post-*Shepard* approach taken by the Fourth, Sixth, Seventh and Eighth Circuits. For example, in addition to "the conviction itself and the type and length of a sentence imposed" (see *United States v. Fagans*, 406 F.3d 138, 141-42 (2d Cir. 2005)), post-*Shepard* courts have also found the fact that offenses occurred on separate occasions to constitute facts "of," and not "about," a prior conviction (see *United States v. Thompson*, 421 F.3d 278, 282-83 (4th Cir. 2005); *Hollingsworth*, 414 F.3d at 623, citing *United States v. Burgin*, 388 F.3d 177, 186 (6th Cir. 2004); *Wilson*, 406 F.3d at 1075; *Schlifer*, 403 F.3d at 852; but see *United States v. Taylor*, 413 F.3d 1146, 1157 (10th Cir. 2005)), so as to fall outside of *Shepard*'s and *Apprendi*'s reach. This approach is also consistent with the Illinois decisions predating *Shepard*, which held that the age and sequence requirements fell within the *Almendarez-Torres* recidivism exception. As such, these holdings would remain consistent with *Shepard* since that court reaffirmed the continued validity of the exception. See *People v. Smith*, 338 Ill. App. 3d 555 (2003); *People v. Dunn*, 326 Ill. App. 3d 281 (2001); *People v. Jones*, 322 Ill. App. 3d 236 (2001); *People v. Dixon*, 319 Ill. App. 3d 881 (2001); *People v. Givens*, 319 Ill. App. 3d 910 (2001).

As the *Jones* court stated:

> "Alternatively, the defendant contends that two of the triggering factors in section 5—5—3(c)(8) (the sequence of the prior offenses and the subject's age) are nonrecidivist in nature. *** The operative subject matter of section 5—5—3(c)(8) is recidivism. In our view, the ancillary components of the statue are sufficiently intertwined with recidivism, and sufficiently distinct from the elements of the instant offense, to fall under the exception recognized in *Apprendi*. We note that the statute upheld in *Almendarez-Torres* contained a sequence element ***. [Citation.] That element is ancillary to the mere fact of a prior conviction, yet it did not trouble the Supreme Court in *Almendarez-Torres* or *Apprendi*." *Jones*, 322 Ill. App. 3d at 243.

See also *State v. Young*, 379 N.J. Super. 498, 879 A.2d 1196 (2005) (employing a similar rationale in upholding its persistent offender statute which also had age and sequence requirements).

Moreover, undercutting defendant's claim for relief, even if his Class X sentencing factors constituted facts "about" prior convictions, post-*Shepard* courts have held, at least in some circumstances, that presentence investigation reports can constitute sufficiently reliable evidence for fact-finding at sentencing. In *Thompson*, the court observed that its trial judge "was entitled to rely upon the PSR because it [bore] the earmarks of derivation from *Shepard*-approved sources such as the indictments and state-court judgments from his prior convictions." *Thompson*, 421 F.3d at 285; *cf. United States v. Perez-Vargas*, 414 F.3d 1282, 1285 (10th Cir. 2005) ("this description [of a prior offense], if accurate, describes a crime of violence by any definition. And if supported by proof allowable under *Taylor* and *Shepard*, the charged conduct would authorize the sentencing enhancement. Unfortunately, we do not have in the record on appeal the 'court documents' relied on by the PSR. We thus cannot evaluate whether the records would be acceptable under the strictures of Supreme Court precedent"); *Taylor*, 413 F.3d at 1157 (remanding when the court could not determine what information was employed in sentencing and the "PSR appear[ed] to have relied upon both police reports and 'court documents'). Thus, potentially, at least, the PSI in this case could have passed muster under *Shepard*, either through referring to or even attaching *Shepard*-approved sources. However, defendant has deprived us of our ability to review the underlying reliability of the PSI by failing to provide it in the record, and we will therefore presume it was sufficient. See *People v. Henderson*, 136 Ill. App. 3d 1041, 1045 (1985) ("It is well known that it is the burden of the appellant to present a record sufficiently complete to permit review of the error complained of, and incompleteness arising from presentation of the record will be resolved against the appellant").

Defendant argues that the Chicago police department rap sheets included in the record were part of the PSI and that they are sufficient to allow appellate review. However, we have no way of knowing, without the submission of the actual PSI, that the probation officer and, in turn the circuit court, did not consider more than just those police records. We especially note that the forgery conviction that defendant's trial counsel contended made him Class X mandatory is not presented in the Chicago police records and therefore points to an outside source we cannot review because of defendant's failure to include the PSI in the record. Defendant also argues that at least one *Shepard*-approved source of information, defendant's charging instruments, would not have provided the dates of the commission of his offenses, necessary for Class X sentencing, since that is not an element of any crime. However, there are many other sources meeting the

*Shepard* standard that very well might, such as plea colloquies or formal judicial findings of fact after a bench trial, and, again, we will not assume that such materials were not reviewed during the preparation of the PSI when presented with an incomplete record.

More overridingly, defendant did not raise objections to the accuracy of the information in the presentence investigation report below. In section 5—3—4(b)(2) of the Code, the legislature provided a safeguard to ensure the accuracy of the information contained in presentence investigation reports: the presentation of the presentence report to the parties at least three days prior to sentencing. 730 ILCS 5/5—3—4(b)(2) (West 2004). One of the purposes of this advance notice is to allow the parties to bring any errors in the report to the court's attention, so that the failure to object results in a concession of its accuracy and the waiver of any claims of inaccuracy. *Williams*, 149 Ill. 2d at 495 ("No purpose would be served by giving the parties notice of the presentence reports at least three days prior to the imposition of sentence [citation] if we were to permit them to later raise objections to the presentence reports for the first time on appeal"); *People v. Meeks*, 81 Ill. 2d 524, 533 (1980) ("It is the duty of the parties *** to bring to the attention of the sentencing authority any alleged deficiency or inaccuracy in the presentence report. *** [A]ny objections to the sufficiency of the report must first be presented to the trial court"); see also *Dillard v. State*, 827 N.E.2d 570, 576 (Ind. App. 2005) ("because of its importance in sentencing, the relevant inquiry regarding pre-sentence reports usually concerns their accuracy. To that end, we are generally concerned only with insuring [*sic*] that the defendant had an *opportunity* to examine the report and challenge any inaccuracies contained therein" (emphasis in original)). Even more importantly, defendant's trial counsel repeatedly conceded that defendant was "Class X mandatory." See *United States v. Collins*, 412 F.3d 515, 523 (4th Cir. 2005) ("because there was no dispute regarding the fact that the offenses were separated by an intervening arrest, the judge did not need to enter into any fact finding regarding a disputed fact about a prior conviction within the meaning of *Washington* and *Shepard*").

Defendant appears to contend that *Shepard* would preclude a finding that objections to presentence report inaccuracies could be waived. However, he cites to no specific language in *Shepard* so holding, and we find none ourselves. Moreover, post-*Shepard* courts have continued to apply the waiver rule when defendants do not object to the contents of their presentence investigation reports. See *United States v. Johnson*, 408 F.3d 535, 539 (8th Cir. 2005) ("Johnson failed to object to the drug quantity calculation in the PSR, and the court could therefore

accept that quantity as admitted for sentencing purposes"); *Fagans*, 406 F.3d at 142 ("Since the Defendant made no objection to the facts contained in the PSR, the fact of this prior conviction may be taken as admitted, and its use to enhance the base offense level was correct under the Guidelines and encounters no Sixth Amendment objection"); *Stokes*, 828 N.E.2d at 943. Thus, by failing to object below, defendant has conceded the accuracy of his PSI as well as explicitly conceding the appropriateness of his Class X sentence for purposes of direct appeal.[4]

■ We turn now to defendant's final contention, that we must correct his mittimus. The State charged defendant on one count of possession of a controlled substance with intent to deliver within 1,000 feet of a public park under section 407(b)(2) of the Controlled Substances Act (720 ILCS 570/407(b)(2) (West 2002)), and one count of possession of a controlled substance with intent to deliver under section 401(d) (720 ILCS 570/401(d) (West 2002)). As indicated previously, the circuit court convicted defendant under the section 401(d), while entering a finding of not guilty on the count under 407(b)(2).[5] However, defendant's mittimus reflects conviction under 407(b)(2). We have authority pursuant to Supreme Court Rule 615(b)(1) (134 Ill. 2d R. 615(b)(1)) to correct the mittimus (see *People v. Thompson*, 354 Ill. App. 3d 579, 594 (2004)) and therefore instruct the clerk of the circuit court to correct the miscitation by changing the charge of conviction from section 407(b)(2) to section 401(d).

Affirmed with instructions to correct the mittimus.

CAHILL, P.J., and BURKE, J., concur.

---

[4]Though defendant attempted to commence an ineffective assistance of counsel claim with respect to entering the narcotics stipulation, we note he raises no ineffective assistance of counsel claim surrounding trial counsel's concessions surrounding his criminal history and Class X status.

[5]The rationale of the court's exoneration on this particular count in light of the undisputed evidence that the narcotics transaction occurred within 1,000 feet of Jackson Park is not presented in the record.