295 P.3d 1005

**STATE of Hawai'i, Plaintiff–Appellee,**

v.

**Stanley S.L. KONG, Defendant–Appellant.**

**No. CAAP–11–0000393.**

Intermediate Court of Appeals of Hawai'i.

Jan. 31, 2013.

Samuel G. MacRoberts (Law Office of Philip H. Lowenthal), on the briefs, for Defendant–Appellant.

Renee Ishikawa Delizo, Deputy Prosecuting Attorney County of Maui, on the briefs, for Plaintiff–Appellee.

FUJISE, Presiding Judge, LEONARD and REIFURTH, JJ.

Opinion of the Court by LEONARD, J.

Defendant–Appellant Stanley S.L. Kong (**Kong**) appeals from an April 11, 2011 Circuit Court of the Second Circuit (**Circuit Court**) Judgment of Conviction and Sentence for promoting a dangerous drug in the second degree and prohibited acts related to drug paraphernalia.[1] On November 19, 2009, Plaintiff–Appellee State of Hawai'i (**State**) charged Kong and co-defendant Sunny Stevens (**Stevens**) with: (1) Promoting a Dangerous Drug in the Second Degree in violation of Hawaii Revised Statutes (**HRS**) § 712–1242 (Supp. 2011) (**Count One**),[2] and (2) Prohibited Acts Related to Drug Paraphernalia in violation of HRS § 329–43.5 (2010) (**Count Two**).[3] Kong petitioned for admission into the Maui Drug Court (**MDC**), and on April 14, 2010, the Circuit Court admitted Kong into the MDC program. However, Kong self-terminated from the program on February 3, 2011, subjecting himself to a stipulated-facts trial. On April 11, 2011, the Circuit Court entered a judgment of conviction against Kong for Counts One and Two and sentenced him to imprisonment for consecutive terms of ten years for Count One and five years for Count Two, for a total of fifteen years.

On appeal, Kong maintains that the judgment of conviction must be vacated and Kong should be allowed to reenter the MDC program, or in the alternative, Kong should be resentenced to a concurrent term or the matter should be remanded for resentencing because the Circuit Court: (1) erred by im-

posing consecutive terms of imprisonment without adequately articulating its justification; (2) violated Kong's due process rights by basing its sentence on crimes Kong did not commit; and (3) erred by terminating Kong from the MDC program without ensuring that he understood the rights he was about to relinquish and its consequences. For the reasons stated below, we affirm.

## I. BACKGROUND FACTS

### A. Alleged Offenses and Charges Against Kong

On November 19, 2009, the State filed a joint Felony Information against Kong in Criminal No. 09–1–0683(2) and Kong's girlfriend, Stevens, in Criminal No. 09–1–0682(2), alleging that each person had committed two offenses on February 27, 2009:(1) promoting a dangerous drug in the second degree; and .(2) prohibited acts related to drug paraphernalia.

The charges stemmed from a search of Kong's and Stevens's residence, where police found "one [ ] large clear plastic bag containing fifteen [ ] packets with purported crystal methamphetamine[4] and numerous empty packets, and a glass pipe[.]" After being advised of his constitutional rights and agreeing to give a statement, Kong admitted that "he has been using crystal methamphetamine off and on since 1995." Kong further stated that he has been selling crystal methamphetamine from his residence for the past three months. Kong's dealer occasionally drops off a "load, often concealed in the inseam of a jacket," and Kong is later informed about

---

1. The Honorable Shackley F. Raffetto presided.

2. HRS § 712–1242 provides, in relevant part:
 (1) A person commits the offense of promoting a dangerous drug in the second degree if the person knowingly:
 (b) Possesses one or more preparations, compounds, mixtures, or substances of an aggregate weight of:
 (i) One-eighth ounce or more, containing methamphetamine, heroin, morphine, or co caine or any of their respective salts, iso mers, and salts of isomers[.]
 (2) Promoting a dangerous drug in the second degree is a class B felony.

3. HRS § 329–43.5 provides, in relevant part:

 (a) It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this chapter. Any person who violates this section is guilty of a class C felony and upon conviction may be imprisoned pursuant to section 706–660 and, if appropriate as provided in section 706–641, fined pursuant to section 706–640.

4. Tests on all fifteen packets resulted in a positive indication of the presence of methamphetamine.

who will come and pick it up. Kong "further added that he does not know what type of drug the 'load' is but assumes it is about an ounce of 'Ice' at a time. Kong added that he also purchases prepackaged packets of 'Ice' from [his supplier] to sell. He related that he usually buys an '8 ball' (3.54 grams) worth of 'Ice' at a time to sell."

### B. *Kong's Admission to the MDC Program*

On April 14, 2010, Kong petitioned for admission to the MDC. The Circuit Court explained that the purpose of the April 14, 2010 hearing was to make sure that Kong understood the legal rights that he would give up and the commitment required to enter the MDC program. The Circuit Court also explained that if Kong broke any of the rules of the MDC program then he could be terminated from the program. After explaining the consequences of successful completion of the MDC program and those if he was terminated from the program, the Circuit Court found that Kong voluntarily, knowingly, and intelligently waived his rights as indicated in the petition for admission to the MDC program, and it admitted Kong into the program.

Kong attended status hearings from April 26, 2010 to November 8, 2010. At the October 25, 2010 status hearing, Kong admitted that he had relapsed and used drugs. The Circuit Court ordered Kong to perform 200 hours of community service and to develop a preventative action plan. At the November 8, 2010 status hearing, the Circuit Court informed Kong that it was giving him another chance to stay in the MDC program. However, Kong failed to appear for his next status hearing on November 15, 2010, and the Circuit Court issued a bench warrant with no bail set. On January 6, 2011, Kong was in custody, and a status hearing was set for January 26, 2011.

### C. *Kong's Termination from MDC Program*

At the January 26, 2011 status hearing, Kong indicated that he wanted to self-terminate from the MDC program and have bail set. The MDC also recommended Kong's termination from the program. The Circuit Court explained to Kong that he has a right to have a termination hearing, with counsel present to represent him, to determine if termination is appropriate. It also explained to Kong the consequences of termination:

> And, now, at a termination hearing, if you are terminated, ... your case would proceed to what's called a stipulated facts trial, in other words, where the facts are agreed on. So if you get past the point of termination, for example, if you self-terminate, for example, or if it's determined that you should be terminated, then the stipulated facts trial is basically a very short trial. Because essentially what you will have done already is admitted to all of the parts of the charge. So that's presented and the trial doesn't even last a minute and you are found guilty as charged.

After Kong indicated that he understood the consequences of self-termination, the Circuit Court further explained that if he self-terminates, he moves "onto a stipulated facts trial where it's almost virtually certain ... that you will be found guilty as charged." Kong again indicated that he understood these consequences.

Kong then stated "for the record" that "[u]p until this point the Public Defender's Office was, to my understanding, was never allowed to represent me in any felony cases because of conflict of interest in the past. They represented people who testified against me." The Deputy Public Defender stated that she discussed with Kong what appeared to be a prior conflict with the Office of Public Defender (**OPD**) arising when Kong was a juvenile on Oahu, but that the OPD database did not indicate a conflict. She understood that Kong still wanted to proceed with self-termination, but possibly with a new attorney. The Circuit Court set a hearing on February 3, 2011 for a motion to withdraw counsel and one on March 7, 2011 for a termination hearing.

On February 3, 2011, Kong informed the court, through counsel and directly, that he wanted to proceed with self-termination from the MDC program. After Kong expressed his desire to self-terminate from the MDC program, the Circuit Court found that Kong

voluntarily, knowingly, and intelligently terminated from the program and it proceeded with a stipulated-facts trial. Upon Kong's request, the Circuit Court set bail at 100,000 dollars.

### D. *Guilty Verdict and Sentencing*

At the February 3, 2011 stipulated-facts trial, the State offered into evidence the Felony Information and the Petition for Admission to Drug Court and Waiver of Rights, which were admitted into evidence without objection. The Circuit Court took judicial notice of Kong's identification, the Circuit Court's jurisdiction, the records on file in the case, and that Kong was represented by counsel throughout the proceedings. The State then rested its case, and the defense did not present any evidence. The Circuit Court found Kong guilty as charged of both Counts One and Two, and it ordered a presentence investigation (**PSI**) report and set sentencing for April 7, 2011.

At the sentencing hearing on April 7, 2011, defense counsel indicated that the defendant had received the PSI report and that "[t]here are no changes at this time." She asked the Circuit Court to give Kong probation with long-term drug treatment. However, the Circuit Court continued sentencing to April 11, 2011, because there was confusion over whether the charge in Count One had been reduced to Promoting a Dangerous Drug in the Third Degree.

At the further sentencing hearing on April 11, 2011, defense counsel stated for the record that "Kong does not want to stipulate to the contents of the [PSI] report in this case[,]" to which the Circuit Court responded, "That's fine." The State clarified that the proper charge in Count One was Promoting a Dangerous Drug in the Second Degree.

Regarding sentencing, Kong again requested probation, or in the alternative, concurrent terms of imprisonment and a recommendation to the Cash Box program to continue his drug treatment. The State requested imprisonment because Kong "has previously served five and ten year prison terms, and his parole was revoked repeatedly in '93, '99, 2001, 2002. He was given a chance as a high risk candidate for drug court, and he just skipped out. So he's not probation eligible[.]"

The Circuit Court sentenced Kong to imprisonment for consecutive terms of ten years for Count One and five years for Count Two, with credit for time served. The court stated:

> Taking into consideration all of the factors set forth in Hawaii Revised Statutes Section 706–606, including the extensive record of the defendant, which includes six burglary convictions, which really represents—I'm sorry. Yeah, six burglary convictions, ten felonies, which represents a lot of harm in our community.
>
> The Court is going to impose the following sentence in this matter. The defendant will be committed to the care and custody of the Director of the Department of Public Safety for a period of ten years on Count 1, five years on Count 2.
>
> . . . .
>
> In view of his extensive criminality, the Court is going to make these counts run consecutive for a total of fifteen years, mittimus forthwith, full credit for time served.
>
> I will order that he be given an opportunity to participate in the Cash Box drug treatment program at the earliest convenience of the Department of Public Safety.

On May 10, 2011, Kong filed a notice of appeal from the April 11, 2011 Judgment of Conviction and Sentence.

## II. *POINTS OF ERROR ON APPEAL*

Kong raises three points of error on appeal, contending that the Circuit Court: (1) erred by imposing consecutive terms of imprisonment without adequately articulating its justification; (2) violated Kong's due process rights by basing its sentence on crimes Kong did not commit; and (3) erred by terminating Kong from the MDC program without conducting a proper on-the-record colloquy advising Kong of the rights he was about to relinquish.

## III. STANDARDS OF REVIEW

■ We review sentencing decisions under the abuse of discretion standard.

A sentencing judge generally has broad discretion in imposing a sentence. The applicable standard of review for sentencing or resentencing matters is whether the court committed plain and manifest abuse of discretion in its decision. Factors which indicate a plain and manifest abuse of discretion are arbitrary or capricious action by the judge and a rigid refusal to consider the defendant's contentions. And, generally, to constitute an abuse it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant.

*State v. Kahapea,* 111 Hawai'i 267, 278, 141 P.3d 440, 451 (2006) (citations, brackets, and internal quotation marks omitted).

■ "This court answers questions of constitutional law by exercising its own independent ... judgment based on the facts of the case. Thus, this court reviews questions of constitutional law under the right/wrong standard." *Kahapea,* 111 Hawai'i at 278, 141 P.3d at 451 (citations, brackets, and internal quotation marks omitted).

■ Regarding Kong's assertion of plain error:

Hawai'i Rules of Penal Procedure Rule 52(b) states that plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court. Therefore, an appellate court may recognize plain error when the error committed affects substantial rights of the defendant.

The appellate court will apply the plain error standard of review to correct errors which seriously affect the fairness, integrity, or public reputation of judicial proceedings, to serve the ends of justice, and to prevent the denial of fundamental rights. This court's power to deal with plain error is one to be exercised sparingly and with caution because the plain error rule represents a departure from a presupposition of the adversary system—that a party must look to his or her counsel for protection and bear the cost of counsel's mistakes.

*State v. Mars,* 116 Hawai'i 125, 132, 170 P.3d 861, 868 (App.2007) (citations, internal quotation marks, and brackets omitted).

## IV. DISCUSSION

### A. The Circuit Court Did Not Abuse its Discretion by Sentencing Kong to Consecutive Terms of Imprisonment

If multiple terms of imprisonment are imposed on a defendant, a sentencing court has the discretion to order the terms to run concurrently or consecutively pursuant to HRS § 706–668.5.[5] HRS § 706–668.5(1) (Supp. 2011). ("If multiple terms of imprisonment are imposed on a defendant ... the terms may run concurrently or consecutively."). "The court, in determining whether the terms imposed are to be ordered to run concurrently or consecutively, shall consider the factors set forth in section 706–606."[6] HRS § 706–668.5(2) (1993).

■ "Absent clear evidence to the contrary, it is presumed that a sentencing court will have considered all factors before impos-

---

5. HRS § 706–668.5 governs the sentencing of a defendant convicted of multiple offenses and is "a general statute in the sense that it pertains generally to all offenses and without regard to the type of offender involved." *State v. Hussein,* 122 Hawai'i 495, 502, 229 P.3d 313, 320 (2010) (citation omitted).

6. HRS § 706–606 provides:

The court, in determining the particular sentence to be imposed, shall consider:
(1) The nature and circumstances of the offense and the history and characteristics of the defendant;
(2) The need for the sentence imposed:

(a) To reflect the seriousness of the offense, to promote respect for law, and to provide just punishment for the offense;
(b) To afford adequate deterrence to criminal conduct;
(c) To protect the public from further crimes of the defendant; and
(d) To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) The kinds of sentences available; and
(4) The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

ing concurrent or consecutive terms of imprisonment under HRS § 706–606[ ]." *State v. Hussein,* 122 Hawai'i 495, 503, 229 P.3d 313, 321 (2010) (citations omitted). Nevertheless, "circuit courts must state on the record at the time of sentencing the reasons for imposing a consecutive sentence" rather than a concurrent one. *Hussein,* 122 Hawai'i at 510, 229 P.3d at 328. The Hawai'i Supreme Court explained:

> Such a requirement serves dual purposes. First, reasons identify the facts or circumstances within the range of statutory factors that a court considers important in determining that a consecutive sentence is appropriate. An express statement, which evinces not merely consideration of the factors, but recites the specific circumstances that led the court to impose sentences consecutively in a particular case, provides a meaningful rationale to the defendant, the victim, and the public.

> Second, reasons provide the conclusions drawn by the court from consideration of all the facts that pertain to the statutory factors. It is vital, for example, for the defendant to be specifically informed that the court has concluded that he or she is dangerous to the safety of the public, or poses an unacceptable risk of re-offending, or that rehabilitation appears unlikely due to his or her lack of motivation and a failure to demonstrate any interest in treatment, or that the multiplicity of offenses and victims and the impact upon the victims' lives warrant imposition of a consecutive term. Hence, reasons confirm for the defendant, the victim, the public, and the appellate court, that the decision to impose consecutive sentences was deliberate, rational, and fair.

*Hussein,* 122 Hawai'i at 509–10, 229 P.3d at 327–28.

■ Here, the Circuit Court did not abuse its discretion by sentencing Kong to consecutive terms of imprisonment pursuant to HRS § 706–668.5 because it considered the factors set forth in HRS § 706–606. The Circuit Court explained its reasoning before

imposing its sentence, stating, "Taking into consideration all of the factors set forth in [HRS] Section 706–606, including the extensive record of the defendant, which includes six burglary convictions ... ten felonies,[7] which represents a lot of harm in our community." The Circuit Court further stated, "In view of [Kong's] extensive criminality, the Court is going to make these counts run consecutive for a total of fifteen years [.]"

Kong's "extensive record" and the fact that he caused "a lot of harm in our community" are specific circumstances that led the Circuit Court to conclude that a consecutive sentence was appropriate in this case. Given these circumstances, the Circuit Court likely concluded that Kong was "dangerous to the safety of the public, or poses an unacceptable risk of re-offending[.]" *Hussein,* 122 Hawai'i at 509, 229 P.3d at 327. In fact, Kong had re-offended, admitting that he had used drugs while participating in the MDC program. Kong had been given a second chance when he was allowed to continue in the MDC program after relapsing. Yet, Kong decided to self-terminate from the program, suggesting that "rehabilitation appears unlikely due to his [ ] lack of motivation and a failure to demonstrate any interest in treatment[.]" *Hussein,* 122 Hawai'i at 509, 229 P.3d at 327. These specific circumstances support the conclusion that the Circuit Court's "decision to impose consecutive sentences was deliberate, rational, and fair." *Hussein,* 122 Hawai'i at 510, 229 P.3d at 328.

In light of the foregoing, we cannot conclude that the Circuit Court abused its discretion by sentencing Kong to consecutive terms of imprisonment.

B. *The Circuit Court Properly Considered Kong's PSI Report*

■ In *State v. Sinagoga,* 81 Hawai'i 421, 918 P.2d 228 (App.1996), this Court "set forth a five-step procedure for trial courts to follow in cases where ordinary sentencing procedures are applicable and there is a possibility that the court may use the defendant's prior conviction(s) as a basis for the imposition or

---

7. As addressed in Section V.B. below, Kong failed to challenge the validity of two convictions in Cr. No. 92–0138(3) listed in his PSI report, thereby waiving his argument that the Circuit Court should not have considered these convictions.

142

enhancement of a prison sentence." *State v. Heggland,* 118 Hawai'i 425, 432 n. 4, 193 P.3d 341, 348 n. 4 (2008) (citing *Sinagoga,* 81 Hawai'i at 447, 918 P.2d at 254) (internal quotations marks omitted). The five-step procedure set forth in *Sinagoga* is as follows:

> *Step one,* the court shall furnish to the defendant or defendant's counsel and to the prosecuting attorney a copy of the presentence report, HRS § 706–604, and any other report of defendant's prior criminal conviction(s). *Step two,* if the defendant contends that one or more of the reported prior criminal convictions was ... uncounseled ... and/or ... not against the defendant, the defendant shall, prior to the sentencing, respond with a good faith challenge on the record stating, as to each challenged conviction, the basis or bases for the challenge. *Step three,* prior to imposing the sentence, the court shall inform the defendant that (a) each reported criminal conviction that is not validly challenged by the defendant is defendant's prior, counseled, validly entered, criminal conviction, and (b) a challenge to any reported prior criminal conviction not made by defendant before sentence is imposed may not thereafter, absent good cause, be raised to attack the court's sentence. *Step four,* with respect to each reported prior criminal conviction that the defendant challenges, the HRE [ (Hawaii Rules of Evidence) ] shall apply, and the court shall expressly decide before the sentencing whether the State satisfied its burden of proving to the reasonable satisfaction of the court that the opposite of the defendant's challenge is true. *Step five,* if the court is aware of the defendant's prior uncounseled or otherwise invalid criminal conviction(s), it shall not impose or enhance a prison sentence prior to expressly stating on the record that it did not consider it or them as a basis for the imposition or enhancement of a prison sentence.

*Heggland,* 118 Hawai'i at 432 n. 4, 193 P.3d at 348 n. 4 (citing *Sinagoga,* 81 Hawai'i at 447, 918 P.2d at 254) (emphasis added).

██ *"Unless conceded by the defendant,* the state is required to show, by evidence satisfactory to the court, the fact of the de-

fendant's prior conviction, as well as the fact of his representation by counsel, or the waiver thereof, at the time of his prior conviction." *State v. Afong,* 61 Haw. 281, 282, 602 P.2d 927, 929 (1979) (citations omitted) (emphasis added). To determine whether a prior conviction "was conceded by the defendant," this Court held in *Sinagoga* that in ordinary sentencing situations, which includes sentencing under HRS § 706–668.5, after the sentencing judge learns of a defendant's prior conviction(s) pursuant to a PSI report or otherwise, "each conviction listed may be used against defendant except those as to which the defendant timely responds with a good faith challenge on the record that the prior criminal conviction was (1) uncounseled, (2) otherwise invalidly entered and/or (3) not against the defendant." *Heggland,* 118 Hawai'i at 439–40, 193 P.3d at 355–56 (citations omitted).

Here, Kong argues that the Circuit Court violated his due process rights by basing its sentence on two convictions in Cr. No. 92–0138(3) that were included in the PSI report but had been dismissed in 1995. Kong submits that he did not "concede" his prior convictions in Cr. No. 92–0138(3) because *Sinagoga* does not apply here. We disagree, finding that the Circuit Court properly relied on Kong's PSI report. *See State v. Kamae,* 56 Haw. 628, 637, 548 P.2d 632, 638 (1976) ("In an ordinary term sentencing proceeding, a sentencing judge customarily relies upon information furnished to him in a presentence diagnosis and report.").

We conclude that *Sinagoga* applies because this is a case where "ordinary sentencing procedures are applicable and there is a possibility that the court may use [Kong's] prior conviction(s) as a basis for the imposition or enhancement of a prison sentence." *Heggland,* 118 Hawai'i 425, 432 n. 4, 193 P.3d 341, 348 n. 4 (citing *Sinagoga,* 81 Hawai'i at 447, 918 P.2d at 254). Finding that the five-step procedure applies here, we further conclude that step one has been taken, but regarding step two, Kong did not raise a good faith challenge to the validity of his convictions in Cr. No. 92–0138(3). At the April 7, 2011 sentencing hearing, Kong's counsel stated, "We have received the [PSI] report.

There are no changes at this time." At the April 11, 2011 sentencing hearing, his counsel merely stated, "Kong does not want to stipulate to the contents of the [PSI] report in this case." Kong did not at any time challenge his prior convictions in Cr. No. 92–0138(3) apparent in the PSI report.

Kong did not avail himself of the opportunity to controvert the PSI report's listing of the convictions in Cr. No. 92–0138(3) as valid prior convictions. *See* HRS § 706–604(2) (Supp. 2011) ("The court shall furnish to the defendant or the defendant's counsel and to the prosecuting attorney a copy of the report of any pre-sentence diagnosis . . . and afford fair opportunity, if the defendant or the prosecuting attorney so requests, to controvert or supplement them."). Kong thus conceded his prior convictions in Cr. No. 92–0138(3) because "each conviction listed may be used against defendant *except* those as to which the defendant timely responds with a good faith challenge on the record that the prior criminal conviction was . . . not against the defendant." *Heggland,* 118 Hawai'i at 439–40, 193 P.3d at 355–56 (citations omitted) (emphasis added).

Kong had more than enough time before sentencing to review the PSI report and bring any errors to the Circuit Court's attention, so that the failure to object resulted in a concession of its accuracy. *Heggland,* 118 Hawai'i at 445–46, 193 P.3d at 361–62 (citing *inter alia People v. Matthews,* 362 Ill.App.3d 953, 968, 299 Ill.Dec. 411, 842 N.E.2d 150, 161–62 (2005) (holding that the defendant conceded the accuracy of his prior convictions in his PSI report by failing to object to the report)). There would be no purpose in giving the parties copies of the PSI report prior to sentencing if we were to permit them later to raise objections to the report for the first time on appeal. *Matthews,* 362 Ill.App.3d at 967, 299 Ill.Dec. 411, 842 N.E.2d at 161 (citation omitted).

For the first time on appeal, Kong argues that his sentence should be vacated because the Circuit Court should not have considered his two prior convictions in Cr. No. 92–0138(3) because they had been dismissed about fifteen years earlier. Kong had an opportunity to object to the validity of these prior convictions as contained in his PSI

report, but he failed to do so. Therefore, Kong waived this argument and these convictions referenced in his PSI report could be deemed as admitted. *See Heggland,* 118 Hawai'i at 445–46, 193 P.3d at 361–62 (citing *inter alia United States v. Fagans,* 406 F.3d 138, 142 (2d Cir.2005) (holding that the defendant's prior conviction referenced in his presentence report could be taken as admitted because he had made no objection to the facts in his report)).

There was no basis for the court to question the validity of Kong's prior convictions in Cr. No. 92–0138(3). The Circuit Court was required to "accord due consideration to a written report of the diagnosis [the PSI report] before imposing sentence[,]" HRS § 706–601, and we find that it properly did so.

██ We also note that these circumstances do not rise to the level of plain error, which should be "exercised sparingly and with caution because the plain error rule represents a departure from a presupposition of the adversary system—that a party must look to his or her counsel for protection and bear the cost of counsel's mistakes." *Mars,* 116 Hawai'i at 132, 170 P.3d at 868 (citations omitted). The State correctly notes that the record indicates that the Circuit Court based its sentence on Kong's extensive criminal record in general and not specifically on the convictions in Cr. No. 92–0138(3). The PSI report, which the Circuit Court considered in imposing its sentence, included all of Kong's prior charges and convictions and not just those in Cr. No. 92–0138(3).

In light of the foregoing, the Circuit Court did not err by relying on Kong's PSI report in imposing its sentence.

C. *The Circuit Court Did Not Improperly Terminate Kong from the MDC Program*

██ Pursuant to the guarantees of procedural due process under the fourteenth amendment of the United States Constitution and article I, section 5 of the Hawai'i Constitution, a defendant is entitled to a hearing so that he can adduce evidence in support of his defense, contest the validity of adverse evi-

dence, and cross-examine adverse witnesses before a court terminates his participation in a drug court program. *Cf. Ringor v. State*, 88 Hawai'i 229, 240, 965 P.2d 162, 173 (App. 1998); *State v. Eline*, 70 Haw. 597, 603–04, 778 P.2d 716, 720 (1989). Here, however, Kong voluntarily self-terminated from the MDC program, but now claims that he "did not waive his right to a termination hearing." We disagree.

 "A waiver is the knowing, intelligent, and voluntary relinquishment of a known right." *State v. Friedman*, 93 Hawai'i 63, 68, 996 P.2d 268, 273 (2000) (citation omitted). As a general principle, the trial court must first engage "in a personal on-the-record colloquy with the defendant" to ensure that the defendant's fundamental rights are voluntarily and knowingly waived. *State v. Murray*, 116 Hawai'i 3, 12, 169 P.3d 955, 964 (2007). "[T]o determine whether a waiver was voluntarily and intelligently undertaken, this court will look to the totality of facts and circumstances of each particular case." *Friedman*, 93 Hawai'i at 68–69, 996 P.2d at 273–74 (citations and internal quotation marks omitted).

Kong's waiver was "voluntarily and intelligently undertaken" under "the totality of facts and circumstances[.]" *Friedman*, 93 Hawai'i at 68–69, 996 P.2d at 273–74 (citations omitted). Kong was advised at three different hearings about the legal rights he would give up and the consequences of self-termination from the MDC program.

At the April 14, 2010 hearing for Kong's petition for admission into the MDC program, the Circuit Court warned that Kong would "give up a lot of important legal rights to come into the program," and further stated that "the whole purpose of today's hearing is really just to make sure you [Kong] understand how much you give up when you come into the program." The Circuit Court explained that if Kong was terminated from the MDC program, then "the Court finds you guilty, and you are set for sentencing. That's it." After the Circuit Court explained the consequences of termination, Kong still wanted to participate in the program and had no questions.

At the January 26, 2011 status hearing, after Kong indicated that he wanted to self-terminate from the MDC program, the Circuit Court explained and emphasized to Kong that he has a right to have a termination hearing. After Kong indicated that he understood his right to a termination hearing, the Circuit Court went on to explain what would happen if Kong was terminated from the program. Kong again indicated three more times that he understood the consequences of a decision to self-terminate.

At the February 3, 2011 termination hearing, Kong's counsel stated that "[a]lthough [Kong] did benefit from the program and he would like to continue, he *understands* and would like to self-terminate in order to speed up the process." Kong confirmed that what his counsel stated was accurate, that he wanted to self-terminate from the program, that his mind was clear about his decision to self-terminate, and that he was not taking any medicine or drugs. The record suggests that Kong's strategy was to self-terminate to expedite sentencing because he was hoping for another chance at probation.

In addition to being orally advised at three hearings about the consequences of termination from the MDC program, Kong signed the MDC program admission agreement, acknowledging that he understood what would happen upon termination from the program. Kong does not dispute that his entry into the program was knowing, intelligent, and voluntary.

The Circuit Court repeatedly warned Kong about the consequences of termination from the MDC program, Kong repeatedly indicated that he understood these consequences, and Kong's decision to self-terminate was direct and unequivocal. The on-the-record colloquy between the Circuit Court and Kong affirmatively shows that Kong decided to proceed with self-termination understanding its consequences. Under the totality of the circumstances, Kong voluntarily and intelligently self-terminated from the MDC program, waiving his right to a termination hearing.

In light of the foregoing, we reject Kong's claim that the Circuit Court erred by terminating him from the MDC program without first ensuring that he understood the rights he was about to relinquish and its consequences.

## V. *CONCLUSION*

For these reasons, the Circuit Court's April 11, 2011 Judgment of Conviction and Sentence is affirmed. On the briefs: