# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 04-2270

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

v.

CARLOS L. CARPENTER,

*Defendant-Appellant*.

_____

Appeal from the United States District Court
for the Central District of Illinois.
No. 02-10009—**Joe Billy McDade**, *Judge*.

_____

ARGUED FEBRUARY 23, 2005—DECIDED MAY 6, 2005

_____

Before CUDAHY, EASTERBROOK, and WILLIAMS, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*.   While one officer was giving Carlos Carpenter a ticket for evading a red light, another arrived with a drug-detection dog. The dog's alert provided probable cause to search the car for drugs, which were duly found. Carpenter pleaded guilty to possession of crack cocaine with intent to distribute, reserving the right to contest on appeal the denial of his motion to suppress. He contended that his situation is identical to the one then

before the Supreme Court in *Illinois v. Caballes*, 125 S. Ct. 834 (2005), where the state court had held that a drug-detection dog conducts a "search" that is reasonable only if supported by probable cause.

After the Supreme Court reversed *Caballes* and reiterated its view that use of a dog in a public place does not require any suspicion, Carpenter changed his tune and argued that *Caballes* is distinguishable. The recast argument for suppression is that waiting for the dog's arrival made the detention unreasonably long. Carpenter's premise is that *Terry v. Ohio*, 392 U.S. 1 (1968), governs the procedures police must use for traffic stops, and prevents them from investigating potential crimes other than the one that led to the stop. We held in *United States v. Childs*, 277 F.3d 947 (7th Cir. 2002) (en banc), that *Terry* does not govern a traffic stop supported by probable cause to believe that an offense has been committed. A panel cannot overrule the en banc court, and we have no reason to recommend that the court convene en banc in this appeal. *Childs* has the support of *Whren v. United States*, 517 U.S. 806 (1996), which treated a stop on probable cause to believe that the driver had committed a traffic offense as an arrest rather than an investigative detention. Cf. *Atwater v. Lago Vista*, 532 U.S. 318 (2001).

Arresting officers must use reasonable procedures, and not all of the steps appropriate to full custodial arrests are good fits for traffic stops. See *Knowles v. Iowa*, 525 U.S. 113 (1998) (full search of vehicle's occupants not reasonable unless the officer has a well founded suspicion or a full custodial arrest ensues); *United States v. Jackson*, 377 F.3d 715 (7th Cir. 2004). But given *Caballes* the only step that could be attacked as "unreasonable" is delay until the dog arrived, and that delay was short—by the prosecutor's calculation none at all (as Carpenter had to remain where he was while the officer completed the steps necessary to issue a citation), and no more than five minutes by

Carpenter's calculation. That modest incremental delay for a person already lawfully arrested cannot be called unreasonable, so the evidence was admissible.

Carpenter's sentence of 70 months' imprisonment depends not only on the quantity of crack charged in the indictment (and admitted by the guilty plea) but also on his criminal history, which the district judge determined to be category III. Carpenter contends that this determination of his criminal history—which raised his sentencing range from 63-78 months to 70-87 months—violates the sixth amendment. See *United States v. Booker*, 125 S. Ct. 738 (2005). That contention is mistaken. All of the material facts are agreed; the dispute concerns the facts' legal significance. *Booker* phrased the constitutional rule this way: "Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to the jury beyond a reasonable doubt." *Id.* at 756. Criminal history is all about prior convictions; its ascertainment therefore is an issue of law excluded by *Booker*'s own formulation and governed by *Almendarez-Torres v. United States*, 523 U.S. 224 (1998). Neither judges nor juries pass on the wisdom of legal rules case by case, and *Booker* (like its predecessor *Apprendi v. New Jersey*, 530 U.S. 466 (2000)), is about who finds facts rather than what legal consequences those facts may have. See *McReynolds v. United States*, 397 F.3d 479, 480-81 (7th Cir. 2005). That is why we held in *United States v. Rosas*, No. 04-2929 (7th Cir. Mar. 24, 2005), slip op. 6-7, that *Booker* does not affect the process of deciding whether a prior offense is a crime of violence.

As the Court explained in *Shepard v. United States*, 125 S. Ct. 1254, 1262-63 (2005), a sentencing court is entitled to classify and take into account the nature of a defendant's prior convictions, provided that the judge does not engage in factfinding about what the accused *did* (as opposed to

what crime he has been convicted of). Carpenter does not contend that the judge went behind the existence of his priors to engage in a factual rather than a legal analysis of his former criminal behavior. (Part III of *Shepard*, which we have cited here, was joined by only four Justices, but another three Justices concluded that recidivist enhancements *never* create problems under the sixth amendment, so Part III speaks for the Court as a practical matter.)

Even if *Almendarez-Torres* were to be overruled, Carpenter could not benefit. He concedes that criminal history category II, which yields a 63-78 month range, is appropriate. The range for criminal history category I would have been 57-71 months. His 70-month sentence is within the lowest range for a person who plans to distribute the amount of crack that he has admitted possessing with intent to distribute, and he therefore has not received "a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict".

This drives Carpenter to argue that he is entitled to be resentenced even though there is no constitutional problem in his existing sentence. According to Carpenter, the separate majority opinion in *Booker* dealing with remedies (see 125 S. Ct. at 756-69) makes the Sentencing Guidelines advisory whether or not the judge has resolved any factual dispute on a preponderance of the evidence. That is true enough. The remedial majority considered but decided not to adopt the approach of leaving the Guidelines in full effect when there is no sixth amendment problem, while knocking out 18 U.S.C. §3553(b)(1) (which makes them binding) only when the district judge rather than the jury had to resolve material factual disputes. "The Government would render the Guidelines advisory in 'any case in which the Constitution prohibits' judicial factfinding. But it apparently would leave them as binding in all other cases. We agree with the first part of the Government's suggestion. However, we do not see how it is possible to leave the Guidelines as binding

in other cases. . . . [W]e believe that Congress would not have authorized a mandatory system in some cases and a nonmandatory system in others, given the administrative complexities that such a system would create. Such a two-system proposal seems unlikely to further Congress' basic objective of promoting uniformity in sentencing." 125 S. Ct. at 768.

Hence in future criminal prosecutions §3553(b)(1) is out of the picture whether or not the district judge has resolved disputed issues of material fact. But our review here is for plain error, and the conclusion (explained above) that there was no sixth amendment error also forecloses the possibility of automatic resentencing under the demanding plain-error standard. See, e.g., *United States v. Olano*, 507 U.S. 725, 734-37 (1993); *Johnson v. United States*, 520 U.S. 461, 468-69 (1997); *Jones v. United States*, 527 U.S. 373, 394-95 (1999); *United States v. Cotton*, 535 U.S. 625, 631-33 (2002); *United States v. Dominguez Benitez*, 124 S. Ct. 2333, 2339-40 (2004). Instead, we have recently held, the appropriate response is a limited remand under *United States v. Paladino*, 401 F.3d 471 (7th Cir. 2005). See *United States v. Castillo*, No. 02-3584 (7th Cir. May 3, 2005), slip op. 31-34; *United States v. White*, No. 03-2875 (7th Cir. May 3, 2005), slip op. 13-16. We need not add to the analysis of *Castillo* and *White*.

Carpenter's conviction is affirmed. The matter is remanded to the district court to make the finding contemplated by *Paladino*. After that has been done, this court will complete its resolution of the appeal.

A true Copy:

    Teste:

                           _____
                           *Clerk of the United States Court of*
                           *Appeals for the Seventh Circuit*