THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. THOMAS JAMES, Defendant-Appellant.

Fourth District   No. 4—03—1082

Opinion filed November 10, 2005.

Charles M. Schiedel and Lawrence Bapst, both of State Appellate Defender's Office, of Springfield, for appellant.

Frank Young, State's Attorney, of Danville (Norbert J. Goetten, Robert J. Biderman, and Linda Susan McClain, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE MYERSCOUGH delivered the opinion of the court:

In September 2002, a jury found defendant guilty of armed robbery, a Class X felony. 720 ILCS 5/18—2(a)(1) (West 2002). In December 2002, defendant was sentenced to an extended-term sentence of 32 years' imprisonment in the Department of Corrections (DOC) with credit for 267 days served in the county jail. Defendant appeals the extended-term sentence, arguing that in light of *Apprendi v. New Jersey*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348 (2000), section 5—5—3.2(b)(1) of the Unified Code of Corrections (Unified Code) (730 ILCS 5/5—5—3.2(b)(1) (West 2002)) is unconstitutional because it allows the trial court to impose an increased penalty without proof beyond a reasonable doubt. Because the court relied solely on the presentence report to find that defendant's prior conviction of a Class X felony made him eligible for an extended term, rather than the State presenting proof beyond a reasonable doubt of defendant's prior conviction, defendant argues his sentence should be vacated. We disagree.

## I. BACKGROUND

By information, defendant was charged with armed robbery (720 ILCS 5/18—2(a)(1) (West 2002)), in that he, "while armed with a dangerous weapon, a knife, took property, United States Currency, from the person or presence of Judy Billman, by the use of force or by threatening the imminent use of force."

Defendant is not appealing his conviction. Therefore, we will present only a brief summary of the evidence presented at trial that resulted in the jury finding defendant guilty of armed robbery. On Friday, March 1, 2002, defendant drove into the parking lot of the Save-a-Lot grocery store in Danville, Illinois, in a blue 1980's model Dodge Dynasty. He approached his nephew, James Martin, in the parking lot. Martin was an employee at the grocery store. After talking briefly about family matters, defendant inquired of Martin how much the grocery store brings in on a daily basis. Martin responded that on a busy day, it could be as much as $25,000. Defendant also found out that Martin's usual days off were Saturdays and Mondays. Defendant proceeded into the store, and Martin did not see him again that day.

Pam Hardy and Lisa Juvinall, both employees at the Danville Save-a-Lot, testified that on March 4, 2002, shortly after 9 a.m., a man, later identified as defendant, walked into the Save-a-Lot grocery store in Danville, Illinois. He was wearing a tan- or tweed-colored coat, a blue stocking cap, sunglasses, a bandage over his nose, and a blue or black scarf around his neck and partially pulled over his face. Hardy testified that defendant pulled down the scarf when he approached her in the store. He had in his hand a container of coleslaw and advised both Hardy and another employee at the store that the coleslaw had made him sick. He insisted on seeing the manager. Defendant was advised that the manager was busy and would not be available to speak to him for 15 to 20 minutes. Defendant proceeded to shop in the store filling almost two grocery carts with various items.

The manager, Judy Billman, testified that on her way back to her upstairs office located in the front of the store, she was advised that a gentleman was insisting on talking to a manager. Billman proceeded to her office and went inside. As she turned around to close the door, defendant was standing at the doorway steps. He shoved the container of coleslaw at her and they had a brief exchange about how it had made him sick and how the store would do whatever was necessary to make him happy. Defendant put his left hand into his pocket and pointed like he had a gun in the pocket. He told Billman that he had a gun and that "this was a hold up [sic]." He told Billman he wanted the bank deposit, and she replied that there was no bank deposit in the store. He told Billman that this was serious, "that he was terminally ill and was dying, and that he didn't care who he took with him." Defendant then lifted the right side of his coat and displayed a knife inside a sheath. He demanded that Billman put the money from the safe into a canvas bank bag along with all the change. Billman testified that the safe contained $500 in $10 bills. Defendant took the bag, told Billman not to call the police until he was out of the store, and then left. Billman identified defendant as the robber.

Pam Razaitis, an employee at the Hollywood Video store located around the corner from the Save-a-Lot store, testified that on Monday, March 4, 2002, she arrived at work at approximately 8:20 a.m. Shortly thereafter, she noticed a blue four-door Dynasty backing into the handicap parking spot just outside the video store. She assumed it was a video store customer so she stood there watching for several minutes, waiting for the driver to come into the store. After 5 to 10 minutes, the driver had not exited the vehicle, so she went about putting away movies. Sometime later, Razaitis returned to the front of the store and noticed a man in a tan-colored coat and greenish-blue stocking cap

walking toward the store from the direction of Save-a-Lot. He walked to the parked blue car, and, when he opened up the back door, Razaitis noticed him toss a burlap "money bag" into the backseat of the car. The man got into the driver's seat, and as he drove away, Razaitis noticed that the license plate had been covered up with something light brown and shiny that reminded her of postal tape. She noticed this because after she saw the man throw the money bag in the backseat, she was going to get the license plate number.

The jury found defendant guilty of armed robbery. The trial court ordered preparation of a presentence investigation report. The November 2002 presentence investigation report reflected that defendant had six prior felony convictions. These included a 1978 conviction for attempt (murder), a Class X felony, for which defendant was sentenced to 30 years in DOC. He was released on parole in February 1996. At the December 2002 sentencing hearing, the court inquired of the parties whether there were any questions regarding the contents of the presentence investigation report. The only question raised by defendant was in regard to the date of his arrest, and the report was amended to reflect the correct date. After arguments of counsel, the court found that, because of defendant's prior felony conviction, he was eligible for an extended-term sentence. The court sentenced defendant to 32 years in DOC.

In July 2003, this court issued a summary order directing the trial court to appropriately admonish defendant pursuant to Supreme Court Rule 605(a)(3)(B) (Official Reports Advance Sheet No. 21 (October 17, 2001), R. 605(a)(3)(B), amended eff. October 1, 2001). *People v. James*, No. 4—02—1008 (July 16, 2003) (unpublished order under Supreme Court Rule 23). In December 2003, defendant filed a motion to reconsider his sentence on the grounds that the sentence was excessive in light of the evidence presented in mitigation, as well as the arguments at trial that justified a minimal sentence. The motion to reconsider was denied, and this appeal followed.

## II. ANALYSIS

Defendant was convicted of a Class X felony, with a sentencing range of 6 to 30 years. 730 ILCS 5/5—8—1(a)(3) (West 2002). However, the trial court found defendant eligible for an extended-term sentence of up to 60 years because of a prior Class X felony conviction for attempt (murder) within 10 years of the present Class X felony conviction. 730 ILCS 5/5—5—3.2(b)(1), 5—8—2(a)(2) (West 2002). Evidence of this prior felony conviction was presented in the presentence investigation report filed with the court. When asked if there were any corrections to the presentence investigation report, the only correction

defendant requested related to his date of arrest. He did not comment on or contest the criminal history contained within the report, which reflected the prior felony conviction that made him eligible for an extended-term sentence. Defendant does not here deny the existence of the prior felony conviction or contest its commission within the 10-year period just prior to the felony conviction that is the subject of this appeal.

Defendant argues that the State was required to present proof beyond a reasonable doubt that he had a prior felony conviction. Because the State did not present a certified copy of his prior felony conviction, defendant now argues that the trial court erroneously relied solely on the presentence investigation report to sentence him to an extended term. Defendant argues that, therefore, his extended-term sentence must be vacated.

The basis for defendant's position is threefold: (1) the enhanced sentencing provision of section 5—5—3.2(b)(1) of the Unified Code (730 ILCS 5/5—5—3.2(b)(1) (West 2002)) is unconstitutional under *Apprendi*, 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348; (2) Illinois cases rejecting this same type of constitutional challenge to *Apprendi* were wrongly decided; and (3) alternatively, even if *Apprendi* does not affect the constitutionality of section 5—5—3.2(b)(1), the section is still unconstitutional because it does not require a heightened standard of proof regarding the prior conviction.

### A. Standard of Review

■ We review the constitutionality of a statute *de novo*. *People v. Fisher*, 184 Ill. 2d 441, 448, 705 N.E.2d 67, 71-72 (1998).

### B. *Apprendi* Does Not Affect the Constitutionality of Section 5—5—3.2(b)(1) of the Unified Code

In *Apprendi*, the United States Supreme Court held that the Constitution requires that any fact that increases the prescribed range of penalties for an offense must be submitted to a jury and proved beyond a reasonable doubt. Defendant contends that section 5—5—3.2(b)(1) violates his right to due process because the statute does not require the State to prove his prior Class X felony conviction beyond a reasonable doubt. We disagree.

■ Section 5—5—3.2(b)(1) of the Unified Code provides as follows:
"(b) The following factors may be considered by the court as reasons to impose an extended[-]term sentence under [s]ection 5—8—2 upon any offender:
(1) When a defendant is convicted of any felony, after having been previously convicted in Illinois or any other jurisdiction of

the same or similar class felony or greater class felony, when such conviction has occurred within 10 years after the previous conviction, excluding time spent in custody, and such charges are separately brought and tried and arise out of different series of acts[.]" 730 ILCS 5/5—5—3.2(b)(1) (West 2002).

Thus, pursuant to section 5—5—3.2(b)(1), a trial court may impose a greater sentence on a defendant who has prior convictions that satisfy the statutory criteria. 730 ILCS 5/5—5—3.2(b)(1) (West 2002); *People v. Stackhouse*, 354 Ill. App. 3d 265, 282, 820 N.E.2d 1027, 1041 (2004). Section 5—5—3.2(b) of the Unified Code does not require that a jury find that a defendant's prior convictions have been proved beyond a reasonable doubt before the court may impose an extended sentence. *People v. Dillard*, 319 Ill. App. 3d 102, 108, 745 N.E.2d 185, 190 (2001), citing *People v. Grier*, 90 Ill. App. 3d 840, 855, 413 N.E.2d 1316, 1327-28 (1980) ("to impose an extended sentence, it is not necessary that a prior conviction within the same class or greater class felony be alleged in the charging instrument or proved as an element of the offense charged").

Defendant concedes the *Apprendi* Court explicitly recognized prior convictions constitute an exception to the general rule that facts which increase a sentence beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. Nonetheless, he contends that (1) the issue of prior convictions was not before the *Apprendi* Court; (2) even though *Apprendi* limited the application of its holding, it never ruled that prior convictions used to increase the range of possible penalties need not be proved beyond a reasonable doubt; and (3) instead, the *Apprendi* Court noted that, "a logical application of our reasoning today should apply if the recidivist issue were contested." *Apprendi*, 530 U.S. at 489-90, 147 L. Ed. 2d at 454, 120 S. Ct. at 2362.

■ The *Apprendi* Court supported its prior-crimes exception by explicitly choosing not to overturn its earlier holding in *Almendarez-Torres v. United States*, 523 U.S. 224, 140 L. Ed. 2d 350, 118 S. Ct. 1219 (1998), stating:

"[A]s *Jones* made crystal clear, 526 U.S. at 248-249, [119 S. Ct. 1215,] our conclusion in *Almendarez-Torres* turned heavily upon the fact that the additional sentence to which the defendant was subject was 'the prior commission of a serious crime.' 523 U.S. at 230[, 118 S. Ct. at 1219]; see also *id.*, at 243[, 118 S. Ct. at 1219] (explaining that 'recidivism ... is a traditional, if not the most traditional, basis for a sentencing court's increasing an offender's sentence'); *id.*, at 244[, 118 S. Ct. 1219] (emphasizing 'the fact that recidivism "does not relate to the commission of the offense ..." ');

*Jones*, 526 U.S. at 249-250, n.10[, 119 S. Ct. 1215] ('The majority and the dissenters in *Almendarez-Torres* disagreed over the legitimacy of the Court's decision to restrict its holding to recidivism, but both sides agreed that the Court had done just that')." *Apprendi*, 530 U.S. at 488, 147 L. Ed. 2d at 454, 120 S. Ct. at 2361-62.

The recidivism exception recognized in *Apprendi* applies here.

Moreover, defendant's assertion regarding *Apprendi*'s notation that, if the fact of a prior conviction were to be contested, then logically its bar against increased penalties without proof beyond a reasonable doubt should apply, is not applicable to the case at bar. At no time during the trial court proceedings did defendant challenge the existence or accuracy of the facts presented regarding his prior Class X felony conviction. He also does not do so on appeal.

Because *Apprendi* specifically declined to overturn *Almarendez-Torres*, section 5—5—3.2(b)(1) of the Unified Code is not unconstitutional.

## C. Illinois Cases Were Not Wrongly Decided

■ Defendant acknowledges that Illinois appellate courts have repeatedly rejected these same constitutional challenges, citing *People v. Pittman*, 326 Ill. App. 3d 297, 761 N.E.2d 171 (2001), *People v. Landrum*, 323 Ill. App. 3d 664, 755 N.E.2d 18 (2001), *People v. Garry*, 323 Ill. App. 3d 292, 752 N.E.2d 1244 (2001), *People v. Childress*, 321 Ill. App. 3d 13, 746 N.E.2d 783 (2001), and *Dillard*, 319 Ill. App. 3d 102, 745 N.E.2d 185. However, defendant argues that these cases were wrongly decided because they relied on the *dicta* in *Apprendi* that stated, "[o]ther than the fact of a prior conviction," any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. Defendant argues that these Illinois decisions incorrectly assumed that, because the *Apprendi* Court did not extend its ruling to the facts related to prior convictions, the Court intended to hold that prior convictions did not require proof beyond a reasonable doubt. Again, because the Supreme Court has not overruled or abandoned *Almendarez-Torres*, we adhere to our prior rulings that statutes that do not require proof beyond a reasonable doubt of prior convictions for purposes of imposing extended-term sentences are constitutional.

## D. The Constitutionality of Section 5—5—3.2(b)(1) Is Not Affected by Its Failure To Require a Heightened Standard of Proof as to Prior Convictions

■ In the alternative, defendant argues that, should this court find

*Apprendi* does not apply, we should still find section 5—5—3.2(b)(1) of the Unified Code unconstitutional because the statute does not require a heightened standard of proof of the existence of the prior conviction and the time when it occurred. Defendant contends that the United States Supreme Court has "suggested" that sentencing determinations that bear significantly on the severity of the sentence should be established by a heightened standard of proof, citing *Almendarez-Torres*, 523 U.S. at 247, 140 L. Ed. 2d at 370, 118 S. Ct. at 1232. This court has rejected this identical argument in *People v. Givens*, 319 Ill. App. 3d 910, 914, 747 N.E.2d 436, 439 (2001) (regarding extended-term sentencing under section 5—5—3(c)(8) of the Unified Code (730 ILCS 5/5—5—3(c)(8) (West 2000)). In *Almendarez-Torres*, the Court noted that the defendant made no separate, subsidiary, standard-of-proof claims with respect to his sentencing, "perhaps because he admitted his recidivism at the time he pleaded guilty and would therefore find it difficult to show that the standard of proof could have made a difference to his case." *Almendarez-Torres*, 523 U.S. at 248, 140 L. Ed. 2d at 371, 118 S. Ct. at 1233. Contrary to defendant's representation that the *Almendarez-Torres* Court "suggested" a heightened standard of proof, in actuality the Court stated, "[a]ccordingly, we express no view on whether some heightened standard of proof might apply to sentencing determinations that bear significantly on the severity of sentence." *Almendarez-Torres*, 523 U.S. at 248, 140 L. Ed. 2d at 371, 118 S. Ct. at 1233.

Further, defendant acknowledges that the Illinois Supreme Court in *People v. Williams*, 149 Ill. 2d 467, 492, 599 N.E.2d 913, 924 (1992), held that a higher standard of proof, beyond a reasonable doubt, should not be imposed on sentencing factors when a trial court finds a defendant eligible for Class X sentencing under section 5—5—3(c)(8) (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3(c)(8) (now 730 ILCS 5/5—5—3(c)(8) (West 2004)). The *Williams* court did indicate that evidence relied upon at sentencing should be relevant and reliable. *Williams*, 149 Ill. 2d at 490, 599 N.E.2d at 924. The *Williams* court acknowledged that a variety of documents containing a defendant's criminal history have been found to be properly relied upon at sentencing. The court noted that "[a] presentence report *** is generally a reliable source for the purpose of inquiring into a defendant's criminal history." *Williams*, 149 Ill. 2d at 491, 599 N.E.2d at 924. The *Williams* rationale regarding Class X sentencing under section 5—5—3(c)(8) also applies to factors used in imposing extended-term sentencing under section 5—5—3.2(b)(1). Defendant offers no contrary argument.

Proof beyond a reasonable doubt of defendant's prior conviction is

not necessary under section 5—5—3.2(b)(1) of the Unified Code. The recidivism exception recognized by *Apprendi* applies here. Accordingly, we find that *Apprendi* does not render section 5—5—3.2(b)(1) of the Unified Code unconstitutional. Here, the presentence report, generally considered a reliable source of evidence at sentencing, indicated that within defendant's prior criminal history was a Class X felony for attempt (murder) that occurred within the 10-year period just prior to his current Class X felony for armed robbery. Defendant has neither refuted the fact that such a conviction existed nor demonstrated that it does not fall under the criteria for extended-term sentencing under the statute. The trial court appropriately relied upon the presentence investigation report to conclude that defendant was eligible for an extended-term sentence and to sentence him accordingly.

### III. CONCLUSION

For the foregoing reasons, we affirm the trial court's imposition of an extended-term sentence.

Affirmed.

STEIGMANN and KNECHT, JJ., concur.