2015 IL App (3d) 130053

Opinion filed May 15, 2015

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

A.D., 2015

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 12th Judicial Circuit, Will County, Illinois, |
| Plaintiff-Appellee, | ) ) | Appeal No. 3-13-0053 |
| v. | ) ) | Circuit No. 12-CF-57 |
| DERRICK JONES, | ) ) ) | Honorable Daniel J. Rozak, |
| Defendant-Appellant. | ) | Judge, Presiding. |

PRESIDING JUSTICE McDADE delivered the judgment of the court, with opinion.
Justices Holdridge and Lytton concurred in the judgment and opinion.

**OPINION**

¶ 1    Following a jury trial, defendant, Derrick Jones, was convicted of aggravated robbery, a

Class 1 felony (720 ILCS 5/18-5(a) (West 2010)). The trial court found defendant extended-

term eligible based, in part, on a prior adjudication of juvenile delinquency referenced in the

presentence investigation report (PSI). The court imposed an extended-term sentence of 24

years' imprisonment. On appeal, defendant does not challenge his conviction, but does challenge

his extended-term eligibility. He argues that his sentence violates the rules set forth in *Apprendi

v. New Jersey*, 530 U.S. 466 (2000), and *Shepard v. United States*, 544 U.S. 13 (2005). We

affirm.

¶ 2                                      FACTS

¶ 3        Defendant was charged by indictment with aggravated robbery (720 ILCS 5/18-5(a) (West 2010)) and unlawful possession of a credit card (720 ILCS 5/17-32(b) (West 2010)). Prior to trial, the State elected to proceed on only the first count of the indictment, aggravated robbery.

¶ 4        Immediately before commencement of the jury trial, the court asked if the sentencing range on the aggravated robbery charge, a Class 1 felony, would be 4 to 30 years. The State responded that this was, indeed, the case. Assistant Public Defender Litricia Payne confirmed to the court that the State had tendered to her a docket sheet indicating that defendant had been previously adjudicated delinquent on multiple counts of residential burglary, and that those adjudications would make defendant's sentencing range in the present matter 4 to 30 years. Defendant, however, refuted having any such adjudications. Payne relayed this to the court:

              "I did speak with [defendant] regarding that court docket and it was relayed back to me that he did not have any priors for residential burglary. So as far as my conversation went on that issue I left it at if that's the case that it's four to 15. But the docket that was tendered to me did indicate adjudications for residential burglary, which would make him four to 30."

¶ 5        The court admonished defendant that he faced a sentencing range of 4 to 30 years' imprisonment. Because, as the court noted, this was the first time it had admonished defendant on this issue, the court allowed defendant to consult further with counsel. Following the discussion, Payne stated that defendant still wished to proceed to trial.

¶ 6        The State's evidence at trial was limited to the facts related to the aggravated robbery; no evidence was introduced regarding defendant's prior adjudication of delinquency. After the trial, the jury returned a verdict finding defendant guilty of the charged offense. Following hearings

2

on posttrial motions, the cause proceeded to sentencing.

¶ 7 At sentencing, the court took into account, *inter alia*, a PSI. In a section labeled "Prior Record - Juvenile," the PSI listed a number of charges—including assault, burglary, criminal trespass to land, knowing damage to property, and three counts of residential burglary—brought in a delinquency proceeding filed under case No. 04 JD 00276. In the PSI, the description of that proceeding stated in part:

"On April 28, 2005, with the then minor, [defendant], having been adjudicated delinquent in the original Petition alleging Assault, and the 1st, 2nd and 3rd Supplemental Petitions alleging: Burglary, Criminal Trespass to Land, Knowingly Damage to Property and Residential Burglary, three (3) Counts. [Defendant] was sentenced to 5 years and 8 months Probation, until his 21st Birthday in the aforementioned offenses, with the first nine (9) months of Probation to be under the directive of Intensive Probation Supervision."

The State remarked that defendant was extended-term eligible, asking the court to impose a "lengthy" sentence. The court ultimately sentenced defendant to an extended-term sentence of 24 years' imprisonment. Defendant's motion to reconsider the sentence was denied.

¶ 8 On appeal, defendant argues that the State failed to prove to a jury beyond a reasonable doubt the fact of defendant's prior juvenile adjudication or to allege that fact in the indictment. Accordingly, defendant contends, the court's decision to impose an extended-term sentence violated his sixth amendment right to a jury under the Supreme Court's ruling in *Apprendi*, 530 U.S. 466. Alternatively, defendant contends that the trial court improperly relied upon the PSI in determining the fact of defendant's prior adjudication of delinquency, in contravention of the Supreme Court's ruling in *Shepard*, 544 U.S. 13. The State maintains that the *Apprendi* prior-

3

conviction exception is applicable to juvenile adjudications and, as a result, it was not required to submit the fact of defendant's prior adjudication to a jury.

¶ 9                                                    ANALYSIS

¶ 10    I. Whether *Apprendi*'s Prior Conviction Exception Applies to Adjudications of Delinquency

¶ 11                                              A. Introduction

¶ 12         The offense of aggravated robbery is categorized as a Class 1 felony in Illinois.  720 ILCS 5/18-5(a) (West 2010).  The standard sentencing range for a Class 1 felony is between 4 and 15 years' imprisonment.  730 ILCS 5/5-4.5-30(a) (West 2010).  The extended-term sentencing range for a Class 1 felony is between 15 and 30 years' imprisonment.  *Id*.  Section 5-5-3.2(b) of the Unified Code of Corrections sets forth a number of factors that a court may consider as a reason to impose an extended-term sentence, including the following factor relevant here:

> "When a defendant who was at least 17 years of age at the time of the commission of the offense is convicted of a felony and has been previously adjudicated a delinquent minor under the Juvenile Court Act of 1987 for an act that if committed by an adult would be a Class X or Class 1 felony when the conviction has occurred within 10 years after the previous adjudication, excluding time spent in custody."  730 ILCS 5/5-5-3.2(b)(7) (West 2010).

The offense of residential burglary—which the PSI indicated to be an underlying offense of defendant's adjudication of delinquency—is, when committed by an adult, a Class 1 felony.  720 ILCS 5/19-3(b) (West 2010).

¶ 13         In *Apprendi*, the United States Supreme Court held that, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory

4

maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. This result, the Court reasoned, was required by the fifth amendment, as well as the jury trial guarantees of the sixth amendment. *Id.* at 476; see also U.S. Const., amends. V, VI. In response to the decision in *Apprendi*, the Illinois legislature enacted section 111-3(c-5) of the Code of Criminal Procedure of 1963, which reads in part:

> "[I]f an alleged fact (other than the fact of a prior conviction) is not an element of an offense but is sought to be used to increase the range of penalties for the offense beyond the statutory maximum that could otherwise be imposed for the offense, the alleged fact must be included in the charging instrument or otherwise provided to the defendant through a written notification before trial, submitted to a trier of fact as an aggravating factor, and proved beyond a reasonable doubt." 725 ILCS 5/111-3(c-5) (West 2010).

¶ 14　　Defendant argues that the State failed to fulfill these requirements with respect to the adjudication of delinquency, which was used to make him eligible for an extended-term sentence.[1] Therefore, defendant contends, the trial court's decision to impose an extended-term sentence violated the Supreme Court's directive in *Apprendi*, and, in turn, the Illinois statute codifying the *Apprendi* decision. The State counters that defendant's adjudication of delinquency should fall under the *Apprendi* exception for prior convictions, and that the State was therefore not required to prove that fact to the jury.

¶ 15　　Although defendant asserts that our supreme court has already decided this issue, his reliance upon *People v. Taylor*, 221 Ill. 2d 157 (2006) is misplaced. In *Taylor*, the court found

---

[1] On appeal, defendant does not challenge the veracity of the delinquency adjudication itself.

that a prior juvenile adjudication does not satisfy the statutory definition of "conviction" for the purposes of the escape statute (720 ILCS 5/31-6(a) (West 1998)). *Taylor*, 221 Ill. 2d at 163-64. However, the court stated expressly that "[t]he question before us is to be distinguished from the somewhat analogous issue of whether a juvenile adjudication is considered a 'prior conviction' for sentencing enhancement purposes under *Apprendi*." *Id.* at 173. Though the court briefly discussed the split among the federal circuits concerning the *Apprendi* issue, it explicitly did not rule on the issue: "We take no position here with respect to the division among the federal circuits. *** [T]he primary issue here turns on a question of statutory construction, while the principal issue in the federal cases turned on whether an adjudication could be classified as a prior conviction for *Apprendi* purposes ***." *Id*. at 175-76.

¶ 16　　　　Thus, contrary to defendant's position, the question of whether an adjudication of delinquency falls under *Apprendi*'s prior conviction exception—and whether the State may in turn forego proving the adjudication to a jury before it may be used for sentence enhancement— remains unsettled in Illinois. Indeed, it appears that it is a matter of first impression for this or any other reviewing court in the state.

¶ 17　　　　Before addressing the issue itself, we note—and defendant concedes—that defendant failed to preserve the issue for appeal by raising a contemporaneous objection and raising the issue in a posttrial motion. The issue is thus forfeited unless defendant can demonstrate that the error rises to the level of plain error. *People v. Thompson*, 238 Ill. 2d 598, 613 (2010). Our supreme court has held that potential *Apprendi* violations are subject to traditional plain error analysis, and that a defendant also bears the burden of showing that the *Apprendi* violation was prejudicial. *People v. Nitz*, 219 Ill. 2d 400, 410 (2006). The first step in any plain error analysis is determining whether any error occurred (*Thompson*, 238 Ill. 2d at 613), and this step

6

represents the majority of our analysis of the present issue. Because determination of *Apprendi*'s scope is purely a question of law, our review will be *de novo*. *People v. Johnson*, 206 Ill. 2d 348, 360 (2002).

¶ 18                                  B. *Apprendi* and its Predecessors

¶ 19        The roots of the *Apprendi* prior-conviction exception can be found in a case decided by the Supreme Court two years earlier, *Almendarez-Torres v. United States*, 523 U.S. 224 (1998). In *Almendarez-Torres*, the Court considered whether a certain statutory provision created a separate crime or was merely a penalty provision authorizing an enhanced sentence. Section 1326(a) of Title 8 of the United States Code authorized a sentence of not more than two years' imprisonment for any deported alien who returns to the United States. 8 U.S.C. § 1326 (1988). Subsection (b), at issue in *Almendarez-Torres*, authorized a sentence of up to 10 years' imprisonment for aliens returning after being deported pursuant to a felony conviction, and a sentence of up to 20 years' imprisonment for aliens returning after being deported pursuant to a conviction for an *aggravated* felony. *Almendarez-Torres*, 523 U.S. 224.

¶ 20        The Supreme Court found that the provisions in subsection (b) were sentence enhancers rather than separate offenses, and that the State was therefore not required to set forth those provisions in the charging document. *Almendarez-Torres*, 523 U.S. at 228; see also *McMillan v. Pennsylvania*, 477 U.S. 79, 84-91 (1986) (factors relevant only to sentencing of an offender found guilty of the charged crime need not be set forth in the indictment). In so ruling, the Court put great emphasis on the fact that the subject matter in question was recidivism, noting that the "subject matter—prior commission of a serious crime—is as typical a sentencing factor as one might imagine." *Almendarez-Torres*, 523 U.S. at 230. Indeed, the Court stressed the traditional role that recidivism has played as a basis for enhancing an offender's sentencing: "[T]o hold that

7

the Constitution requires that recidivism be deemed an 'element' of petitioner's offense would mark an abrupt departure from a longstanding tradition of treating recidivism as " 'go[ing] to the punishment only.' " *Id*. at 244 (quoting *Graham v. West Virginia*, 224 U.S. 616, 629 (1912)).

¶ 21        The Court would turn to its reasoning in *Almendarez-Torres* the next year in deciding *Jones v. United States*, 526 U.S. 227 (1999). In *Jones*, the Court was once again tasked with deciding whether a statutory provision[2] should be considered a sentencing factor or a separate offense, requiring notice in the charging instrument, proof beyond a reasonable doubt, and submission to a jury. *Jones*, 526 U.S. at 251-52. The Court distilled the issue down to a single question: "[M]ay judicial factfinding by a preponderance support the application of a provision that increases the potential severity of the penalty for a variant of a given crime?" *Id*. at 242. The Court found that such a result would shrink the role of the jury, and that "the relative diminution of the jury's significance would merit Sixth Amendment concern." *Id*. at 248. Also citing the traditional view of aggravated offenses as separate offenses, the Court held that the requirement of serious bodily injury constituted an element of a separate offense, and was subject to the above requirements. *Id*.

¶ 22        The *Jones* Court recognized that in reaching that result, it would be required to distinguish *Almendarez-Torres*. The Court emphasized that the holding in *Almendarez-Torres* "rested in substantial part on the tradition of regarding recidivism as a sentencing factor, not as an element to be set out in the indictment." *Id.* at 249. The fact of a prior conviction was

---

[2] At issue in *Jones* was the federal carjacking statute, which provided for a base sentence of no more than 15 years' imprisonment, a sentence of no more than 25 years' imprisonment if serious bodily injury results from the unlawful conduct, and a sentence of up to life imprisonment or death if death results from the unlawful conduct. 18 U.S.C. § 2119 (1994).

8

"potentially distinguishable for constitutional purposes from other facts that might extend the range of possible sentencing." *Id*. The Court then expounded on one of the reasons for the constitutional distinctiveness of recidivism: "[U]nlike virtually any other consideration used to enlarge the possible penalty for an offense, and certainly unlike the factor before us in this case, a prior conviction must itself have been established through procedures satisfying the fair notice, reasonable doubt, and jury trial guarantees." *Id*.

¶ 23     The next term, the Court decided *Apprendi*, putting constitutional weight behind much of what it had alluded to the previous year in *Jones*. The Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi*, 530 U.S. at 490. By giving force to the recidivism—or prior conviction—exception, the Court thus implicitly affirmed its earlier ruling in *Almendarez-Torres*. However, the statutory provision at issue in *Apprendi* was not recidivism, but a hate crime statute. As such, the *Apprendi* Court pointed out that its holding did not strictly require it to revisit the *Almendarez-Torres* recidivism exception:

> "Even though it is arguable that *Almendarez-Torres* was incorrectly decided, and that a logical application of our reasoning today should apply if the recidivist issue were contested, Apprendi does not contest the decision's validity and we need not revisit it for purposes of our decision today to treat the case as a narrow exception to the general rule we recalled at the outset. Given its unique facts, it surely does not warrant rejection of the otherwise uniform course of decision during the entire history of our jurisprudence." *Id.* at 489-90.

The Court also touched upon—albeit briefly—the logic underlying *Almendarez-Torres* and the

9

prior-conviction exception:

> "[T]here is a vast difference between accepting the validity of a prior judgment of conviction entered in a proceeding in which the defendant had the right to a jury trial and the right to require the prosecutor to prove guilt beyond a reasonable doubt, and allowing the judge to find the required fact under a lesser standard of proof." *Id.* at 496.

¶ 24                                    C. Nonjury Adjudications of Delinquency

¶ 25          The exact parameters of the prior-conviction exception remain undefined. Indeed, aside from the *Almendarez-Torres* Court's extensive reliance on tradition, the Supreme Court's only stated rationale for the exception was provided in brief passages in *Jones* and *Apprendi*—two cases in which the prior-conviction exception itself was not directly at issue. The Court has not addressed the issue of whether an adjudication of delinquency is encompassed by the prior-conviction exception, and lower federal courts and state courts are split on the issue. However, as discussed *infra*, the majority of lower courts have held that an adjudication of delinquency *does* fall under the exception, and thus need not be set out in the indictment, submitted to a jury, or proven beyond a reasonable doubt.

¶ 26              1. Procedural Safeguards Attendant to Juvenile Delinquency Proceedings

¶ 27          In *Jones* and *Apprendi*, the Supreme Court opined that the prior-conviction exception was constitutionally justified by the procedural safeguards in place at the time of the earlier conviction. Because criminal convictions are only achieved when a defendant has been protected by the requirements of fair notice, the right to a jury, and the right to have guilt proven beyond a reasonable doubt, the safeguards required when using that conviction to later enhance a sentence need not be as stringent. See *Apprendi*, 530 U.S. at 496. Because juvenile delinquency

10

proceedings provide some, but not all, of those procedural safeguards provided in an adult criminal trial, lower courts have sought to determine whether delinquency proceedings provide *enough* safeguards to later qualify for the prior-conviction exception. As the Eighth Circuit Court of Appeals described the issue: "[W]hile the Court established what constitutes sufficient procedural safeguards (a right to jury trial and proof beyond a reasonable doubt), and what does not (judge-made findings under a lesser standard of proof), the Court did not take a position on possibilities that lie in between these two poles." *United States v. Smalley*, 294 F.3d 1030, 1032 (8th Cir. 2002).

¶ 28    The precise set of due process safeguards required in the adjudicatory phase of juvenile proceedings was largely established through a series of Supreme Court cases decided more than four decades ago. In *In re Gault*, 387 U.S. 1, 33, 41, 55 (1967), the Court held that the due process requirements of fair notice, the right to counsel, and the privilege against self-incrimination were applicable in the adjudicatory phase of juvenile proceedings. In *In re Winship*, 397 U.S. 358, 365 (1970), the Court found that juveniles, like adults, are constitutionally entitled to proof beyond a reasonable doubt when charged with a violation of a criminal law. After tracing the history and reasoning behind beyond-the-reasonable-doubt standard, the *Winship* Court concluded that "[t]he same considerations that demand extreme caution in factfinding to protect the innocent adult apply as well to the innocent child." *Id.* One year later, in *McKeiver v. Pennsylvania*, 403 U.S. 528 (1971), the Court held that the Constitution's due process clause does *not* require that a juvenile be afforded the right to a trial by jury, thus determining that the rights conferred in adult criminal proceedings are not perfectly congruent with those due to juveniles in delinquency proceedings. *Id.* at 533.

¶ 29    Courts analyzing adjudications of delinquency in the context of the prior-conviction

11

exception have done so with those constitutional requirements in mind. *E.g.*, *Welch v. United States*, 604 F.3d 408 (7th Cir. 2010). In Illinois, the Juvenile Court Act of 1987 (Act) codifies the constitutional requirements. 705 ILCS 405/1-1 *et seq.* (West 2010). Section 1-5 of the Act provides to the minor who is the subject of the proceeding "the right to be present, to be heard, to present evidence material to the proceedings, to cross-examine witnesses, to examine pertinent court files and records and also, although proceedings under this Act are not intended to be adversary in character, the right to be represented by counsel." 705 ILCS 405/1-5 (West 2004). Section 5-605 provides that all trials under the Act shall be held before the court and the standard of proof and rules of procedure in those trials shall be the same as those applicable in criminal proceedings.[3] 705 ILCS 405/5-605 (West 2010).

¶ 30                                    2. Lower Court Treatment

¶ 31        The first court to address the present issue was the Ninth Circuit Court of Appeals. In *United States v. Tighe*, 266 F.3d 1187 (9th Cir. 2001), the Ninth Circuit concluded that a prior nonjury adjudication of delinquency does not fall under the prior-conviction exception to *Apprendi*. *Id.* at 1194-95. Relying upon the Supreme Court's commentary in *Jones*, the *Tighe* court reasoned that the Supreme Court's "recognition of prior convictions as a constitutionally permissible sentencing factor was rooted in the concept that prior convictions have been, by their very nature, subject to the fundamental triumvirate of procedural protections intended to

_____

[3] While the Act does provide for a right to a jury trial in certain situations, such as adjudication of whether a minor is deemed a "Violent Juvenile Offender" (705 ILCS 405/5-820(a), (d) (West 2010)), defendant was not afforded that right here. An adjudication of delinquency pursuant to a jury trial would fall under the prior-conviction exception, as it would have met all of the procedural safeguards mentioned by the *Jones* and *Apprendi* courts.

12

guarantee the reliability of criminal convictions: fair notice, reasonable doubt and the right to a jury trial." *Id.* at 1193. Because juvenile proceedings do not provide the right to a jury trial, adjudications arising from those proceedings could not fall under the prior-conviction exception. *Id*. at 1194. Noting that the Supreme Court in *Apprendi* had expressed skepticism toward *Almendarez-Torres* and the prior-conviction exception, the *Tighe* court refused to extend the exception any further. *Id*.

¶ 32     Dissenting from the *Tighe* majority, Judge Brunetti pointed out that the Supreme Court's language in *Jones*, reiterated in *Apprendi*, referred strictly to prior criminal convictions. *Id.* at 1200 (Brunetti, J., dissenting). "In my view," Judge Brunetti wrote, "the language in *Jones* stands for the basic proposition that Congress has the constitutional power to treat prior convictions as sentencing factors subject to a lesser standard of proof because the defendant presumably received all the process that was due when he was convicted of the predicate crime." *Id*. Extending the logic of *Jones* to juvenile adjudications, Judge Brunetti argued that when a minor receives all the process that is constitutionally due in a juvenile proceeding, there is no constitutional problem in later using that adjudication as a sentencing enhancement. *Id*. Because, under *McKeiver*, the right to a jury trial for a juvenile is not mandated by due process, a nonjury adjudication of delinquency would fall under *Apprendi*'s prior-conviction exception. *Id*.

¶ 33     The reasoning found in Judge Brunetti's dissent would be echoed in a number of opinions over the next decade as numerous courts found that nonjury juvenile adjudications fell under the exception. In *Smalley*, the Eighth Circuit Court of Appeals disagreed with the *Tighe* majority, holding that adjudications of delinquency can properly be characterized as prior convictions for *Apprendi* purposes. *Smalley*, 294 F.3d at 1032. The *Smalley* court reasoned that it is incorrect to assume that the " 'fundamental triumvirate of procedural protections' " are not only sufficient, but

necessary before an adjudication may qualify for the *Apprendi* exception.  *Id.* (quoting *Tighe*, 266 F.3d at 1193).  The court wrote:

> "[W]e conclude that the question of whether juvenile adjudications should be exempt from *Apprendi*'s general rule should not turn on the narrow parsing of words, but on an examination of whether juvenile adjudications, like adult convictions, are so reliable that due process of law is not offended by such an exemption."  *Smalley*, 294 F.3d at 1032-33.

After citing the many due process protections that are afforded to minors, the court concluded that adjudications of juvenile delinquency are sufficiently reliable to fall under the prior-conviction exception.  *Id.* at 1033.

¶ 34        In *Welch*, 604 F.3d 408, the Seventh Circuit Court of Appeals also held that a nonjury adjudication of delinquency could be used to enhance a sentence without the requirement that the adjudication be proven beyond a reasonable doubt to a jury.  The *Welch* court opined that "[p]rior convictions are not subject to the *Apprendi* rule if the defendant received all the protections to which he was constitutionally entitled, and the integrity of the fact-finding procedures are thereby ensured."  *Id.* at 429.  Citing to *Winship*, *Gault*, and *McKeiver*, the court found that the Supreme Court had been vigilant in ensuring that juvenile adjudicative proceedings meet constitutional standards.  *Id.*  "[B]ecause juvenile adjudications are reliable," the court concluded, "they are not subject to the *Apprendi* rule."  *Id.*  In so holding, the Seventh Circuit joined the Eighth Circuit, Third Circuit (*United States v. Jones*, 332 F.3d 688 (3d Cir. 2003)), Eleventh Circuit (*United States v. Burge*, 407 F.3d 1183 (11th Cir. 2005)), Sixth Circuit (*United States v. Crowell*, 493 F.3d 744 (6th Cir. 2007)), First Circuit (*United States v. Matthews*, 498 F.3d 25 (1st Cir. 2007)), and Fourth Circuit (*United States v. Wright*, 594 F.3d

14

259 (4th Cir. 2010)), in finding the prior-conviction exception applicable to juvenile adjudications.

¶ 35    A majority of state courts have also taken the same position on the juvenile adjudication issue. In 2009, the California supreme court sided with the majority in holding that the exception did apply to prior adjudications of delinquency. *People v. Nguyen*, 209 P.3d 946 (Cal. 2009). The court held that a trial court's authority to impose a greater punishment based upon a defendant's recidivism "may properly be exercised *** when the recidivism is evidenced *** by a *constitutionally valid* prior adjudication of criminal conduct." (Emphasis in original.) *Id*. at 949; see also, *e.g.*, *State v. Hitt*, 42 P.3d 732 (Kan. 2002); *Ryle v. State*, 842 N.E.2d 320 (Ind. 2005); *State v. McFee*, 721 N.W.2d 607 (Minn. 2006). Rulings on the issue at the state level have not been unanimous, however, as multiple state courts have, instead, followed the stricter logic of *Tighe*. See, *e.g.*, *State v. Brown*, 2003-2788 (La. 7/6/04); 879 So. 2d 1276; *State v. Harris*, 118 P.3d 236 (Or. 2005).

¶ 36    After studying the opinions of the courts that have addressed this matter, at both the federal and state levels, we join the majority. We agree that an adjudication of juvenile delinquency, reached only where all constitutionally required procedural safeguards are in place, is a no less reliable basis for the enhancement of a sentence than is a standard adult criminal conviction. To hold otherwise would be " 'to hold that the enhancement of an adult criminal sentence requires a higher level of due process protection than the imposition of a juvenile sentence.' " *Tighe*, 266 F.3d at 1199 (Brunetti, J., dissenting) (quoting *United States v. Williams*, 891 F.2d 212, 215 (9th Cir. 1989)). These concerns are more persuasive on the issue than is a "narrow parsing" of the Supreme Court's brief *dicta* in *Jones* and *Apprendi*. *Smalley*, 294 F.3d at 1033. As the Fourth Circuit stated in *Wright*: "As a jury is not required in a juvenile adjudication

15

on the merits, we see no reason to impose such a requirement through the back door by allowing former juveniles who have subsequently reached adulthood to overturn their adjudications in subsequent sentencing hearings." *Wright*, 594 F.3d at 263-64.

¶ 37     This conclusion is further bolstered by the Supreme Court's decision in *McKeiver*. In holding that due process does not require the right to a jury trial in juvenile proceedings, a majority of the Court emphasized that a jury is not "a necessary component of accurate factfinding." *McKeiver*, 403 U.S. at 543, 547 ("[t]he imposition of the jury trial on the juvenile court system would not strengthen greatly, if at all, the factfinding function"). In concurrence, Justice White agreed, opining that a jury "is not necessarily or even probably better at the job than the conscientious judge." *McKeiver*, 403 U.S. at 551 (White, J., concurring). Thus, the proposition that the absence of a right to a jury trial does *not* undermine the reliability of a juvenile proceeding finds support in Supreme Court jurisprudence.

¶ 38     In the case *sub judice*, defendant was provided with all required constitutional safeguards in his prior juvenile proceedings, including the right to fair notice and the right to have facts proven beyond a reasonable doubt. As the adjudication of delinquency provided all process that was due, we find that it is sufficiently analogous to a prior criminal conviction to fall under the exception in *Apprendi*. The State was thus not required to put the fact of defendant's prior adjudication in its indictment, present the fact to a jury, or prove the fact of the adjudication beyond a reasonable doubt. As we find that no error was committed by the trial court, we need not proceed any further in our plain error analysis.

¶ 39                              II. Trial Court's Use of the PSI

¶ 40     As prior adjudications of delinquency fall under the *Apprendi* exception for prior convictions, and thus need not be proven to a jury, reason dictates that such adjudications are a

16

subject properly within the scope of judicial factfinding at sentencing. However, defendant takes issue with the trial court's reliance upon the PSI as the basis for determining that he had been adjudicated delinquent for an offense that would be a Class 1 felony. Like the *Apprendi* issue, defendant concedes that this error was not preserved, and argues instead that plain error was committed. Once again, the first step in plain error analysis is determining whether any error occurred. *Thompson*, 238 Ill. 2d at 613.

¶ 41    The issue of what sources a court may constitutionally rely upon in its role as factfinder at sentencing was discussed at length in *Shepard*, 544 U.S. 13. Specifically, the Supreme Court looked to the Armed Career Criminal Act (ACCA), which mandated a minimum of 15 years' imprisonment for anyone found in possession of a firearm "after three prior convictions for serious drug offenses or violent felonies." *Id.* at 15 (citing 18 U.S.C. § 924(e) (2000 ed. and Supp. II)). Under ACCA, only generic burglary—a burglary committed in a building or enclosed space, rather than a boat or motor vehicle—was considered a violent felony. *Shepard*, 544 U.S. at 15-16; see *Taylor v. United States*, 495 U.S. 575 (1990) (interpreting burglary provision of ACCA). Because statutes in some states define burglary in a broader fashion, encompassing both generic and nongeneric burglary, whether a prior conviction may stand as a predicate offense under ACCA is not always immediately clear.

¶ 42    The Court had addressed the same issue 15 years earlier in *Taylor*, holding that a trial court may only look to the fact of conviction and the statutory definition of the prior offense in determining whether an offender had previously committed generic burglary. *Taylor*, 495 U.S. at 602. The *Shepard* Court affirmed its previous ruling in *Taylor*, finding that a later court tasked with determining the nature of a burglary conviction "is generally limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy,

17

and any explicit factual finding by the trial judge to which the defendant assented." *Shepard*, 544 U.S. at 16. The Court later added that "some comparable judicial record of this information" would also be suitable. *Id*. at 26. The Court rejected the government's argument that a sentencing judge should be permitted to read police reports in order to make the determination. *Id*.

¶ 43    Justice Souter included in his majority opinion[4] a discussion on the impact of *Apprendi* on the issue before the court, writing:

> "While the disputed fact here [(whether a defendant committed generic burglary)] can be described as a fact about a prior conviction, it is too far removed from the conclusive significance of a prior judicial record, and too much like the findings subject to *Jones* and *Apprendi*, to say that *Almendarez-Torres* clearly authorizes a judge to resolve the dispute." *Shepard*, 544 U.S. at 25.

Defendant relies upon this language, arguing that while the sentencing court may consider the fact of a prior conviction, "the sources upon which the sentencing court may rely to make that determination are severely limited." Thus defendant contends that a PSI, similar to the police reports at issue in *Shepard*, may not be relied upon by the sentencing court without offending *Apprendi*.

---

[4] A five-justice majority, consisting of Justices Souter, Stevens, Scalia, Ginsburg, and Thomas, agreed in the holding. Justice Thomas, however, did not join in the section discussing *Apprendi* (Part III). Nevertheless, because the dissenting Justices argued that recidivism enhancements *never* trigger constitutional concerns, "Part III speaks for the Court as a practical matter." *United States v. Carpenter*, 406 F.3d 915, 917 (7th Cir. 2005).

18

¶ 44        In the immediate aftermath of *Shepard*, the Fourth District addressed a similar argument. In *People v. James*, 362 Ill. App. 3d 285, 289 (2005), the defendant argued that "the trial court erroneously relied solely on the [PSI] report to sentence him to an extended term." The Fourth District held that under *Apprendi*, the fact of a prior conviction need not be proven beyond a reasonable doubt, and that a PSI is an appropriate and reliable source for judicial determination of that fact. The court put particular emphasis on *People v. Williams*, 149 Ill. 2d 467 (1992), in which our supreme court "acknowledged that a variety of documents containing a defendant's criminal history have been found to be properly relied upon at sentencing." *James*, 362 Ill. App. 3d at 292. Specifically, the *Williams* court found that "[a] presentence report *** is generally a reliable source for the purpose of inquiring into a defendant's criminal history." *Williams*, 149 Ill. 2d at 491.

¶ 45        Other Illinois courts subsequently analyzing this issue have addressed *Shepard* directly. In *People v. Johnson*, 372 Ill. App. 3d 772 (2007), the First District addressed the question of "whether[,] under *Shepard*[,] the information provided by defendant's PSI can be used by the trial court to establish the existence of a prior conviction for purposes of imposing an extended-term sentence." *Id.* at 779. The court pointed out that the inquiry in *Shepard* was a fact-based inquiry into the elements of an underlying crime; in *Johnson* there was no question as to how the prior felonies were committed, but only the question of if those felonies were committed. *Id.* at 780. The *Johnson* court noted that under *Apprendi*, the fact of a prior conviction need not be proven beyond a reasonable doubt, and found that this exception remained viable after *Shepard*. *Id.* at 781. "Consistent with *Apprendi* and *Shepard*, a judge can use appropriate judicial documents and records to enhance a sentence based on prior convictions. Accordingly, the PSI

19

is an acceptable source for the trial judge to use when considering the defendant's prior criminal background." *Id.*

¶ 46    One year later, in *People v. Bolton*, 382 Ill. App. 3d 714 (2008), the Second District found that the trial court did not err when it considered an ambiguous PSI at sentencing.[5] In so ruling, the court relied upon the Seventh Circuit Court of Appeals' summary of the *Shepard* decision. In *Carpenter*, 406 F.3d at 917, the Seventh Circuit explained: "[A] sentencing court is entitled to classify and take into account the nature of a defendant's prior convictions, provided that the judge does not engage in fact-finding about what the accused *did* (as opposed to what crime he has been convicted of)." (Emphasis in original.) Because the trial court in *Bolton* did not go " 'behind the existence of [the defendant's] priors to engage in a factual rather than a legal analysis of his former criminal behavior,' " the Second District found that it had "remained within the bounds of the inquiry permitted by *Shepard*." *Bolton*, 382 Ill. App. 3d at 725 (quoting *Carpenter*, 406 F.3d at 917).

¶ 47    We agree with our colleagues in the other districts that information from a PSI may be used as the basis for sentence enhancement, and that this does not run afoul of *Shepard*. The mere inquiry into the fact of a prior conviction, a fact which need not be proven beyond a reasonable doubt, is not the kind of fact-based inquiry with which the *Shepard* court was concerned. Though defendant contends that a PSI is particularly unreliable in determining the

---

[5] The defendant in *Bolton* claimed that his prior conviction was for simple possession (a Class 4 felony), while the State maintained that the conviction was for unlawful possession with intent to deliver (a Class 2 felony). The PSI only indicated that the defendant was convicted of " 'Possession of Controlled Substance' " and sentenced to three years' imprisonment, a term within the range of both a Class 2 and a Class 4 felony. *Bolton*, 382 Ill. App. 3d at 722.

fact of a prior adjudication of delinquency, as opposed to a prior criminal conviction, this argument is unconvincing. The PSI here, unlike that in *Bolton*, is unequivocal. It indicates that defendant was adjudicated delinquent pursuant to a petition alleging three counts of residential burglary, a Class 1 felony.

¶ 48        Having decided that a prior adjudication of delinquency is sufficiently analogous to a prior conviction so as to fall under the exception to *Apprendi*, we find that the fact of the prior adjudication may be determined by the sentencing court through reference to the PSI. The trial court here committed no error. As we find that there has been no error, we need not proceed any further in our plain error analysis.

¶ 49                                CONCLUSION

¶ 50        The judgment of the circuit court of Will County is affirmed.

¶ 51        Affirmed.